2000 UT 58

**Peter LYSENKO, Plaintiff and Petitioner,**

v.

**Mitchell J. SAWAYA and Lillie Marie Sawaya, Defendants and Respondents.**

No. 990240.

Supreme Court of Utah.

July 11, 2000.

Leslie W. Slaugh, Provo, for plaintiff.

Stephen B. Mitchell, Salt Lake City, for defendants.

ON CERTIORARI TO THE UTAH
COURT OF APPEALS

RUSSON, Associate Chief Justice:

¶ 1 On writ of certiorari, plaintiff Peter Lysenko seeks review of the court of appeals' decision affirming the trial court's award of damages to Lysenko for conversion. Lysenko claims that the trial court applied an incorrect measure of damages and that the court of appeals improperly affirmed.

## BACKGROUND

¶ 2 In May 1978, defendants Mitchell J. Sawaya and Lillie Marie Sawaya (the "Sawayas") leased property (the "premises") in Orem, Utah, to the Burger King Corporation ("Burger King") on which Burger King intended to construct a restaurant building. The lease term was for fifteen years. Under the lease, any additions or improvements that Burger King made to the premises would become the property of the Sawayas if not removed within fifteen days of termination of the lease.

¶ 3 On February 6, 1979, after constructing a restaurant building on the premises, Burger King entered into a sublease agreement with plaintiff Peter Lysenko. The sublease permitted Lysenko to operate a restaurant in accordance with a franchise agreement into which he entered with Burger King. The sublease provided that any personal property installed on the premises by Lysenko would remain his property after the sublease ended. Lysenko purchased and installed the necessary equipment and opened for business.

¶ 4 Lysenko's purchase of equipment was financed by a loan from Central Bank and Trust ("Central Bank"). Central Bank filed a UCC–1 financing statement in connection with the loan to Lysenko. The collateral listed in the financing statement included the restaurant equipment, fixtures, furniture, signs, improvements, accessories, accessions, and additions.

¶ 5 On February 22, 1992, Lysenko and Burger King executed an agreement in which Burger King agreed to sell, and Lysenko to purchase, the restaurant building. The agreement provided that in case of default, the nondefaulting party could terminate the agreement if the defaulting party did not cure the default within five days of receiving notice of default. The agreement also stated that Burger King's interest in the premises was still subject to Burger King's lease with the Sawayas.

¶ 6 In February 1993, after Lysenko failed to cure monetary defaults to Burger King, Burger King terminated Lysenko's franchise agreement, sublease of the premises, and agreement for sale of the restaurant building. Lysenko closed the restaurant in April 1993.

¶ 7 Before the fifteen-year term of the Sawayas' lease to Burger King expired on February 6, 1994, the Sawayas informed Central Bank, Burger King, and Lysenko that all improvements, personal property, and equipment were to be removed from the premises. The Sawayas warned that any improvements, personal property, or equipment not removed within fifteen days after February 6, 1994, would be forfeited to the Sawayas. Burger King informed the Sawayas that at that time, Lysenko's claim to the equipment was subject to Central Bank's and Burger King's interests, and as a result, Lysenko was in no position to remove his equipment from the premises. When Lysenko then requested permission to remove his equipment from the premises, the Sawayas refused.

¶ 8 Meanwhile, Lysenko arranged for one of his former employees, Curtis Loosli, to purchase Central Bank's security interest in the restaurant equipment. On February 8, 1994, Central Bank sold its security interest in the equipment to Loosli, who then conveyed his interest to Lysenko. Lysenko never successfully entered the premises to remove the equipment after the lease terminated.

¶ 9 Thereafter, the Sawayas leased the premises to another tenant, HB Properties, which began operating a restaurant on the site in September 1994. HB Properties discarded some of Lysenko's equipment that remained on the premises but retained and used most of it.

¶ 10 Lysenko filed an action against the Sawayas, arguing that they had unlawfully prevented him from removing his equipment, and in fact had converted the equipment.[1] Lysenko sought either possession of the equipment or its equivalent value. At trial, Lysenko's expert witness testified regarding two methods for determining the value of the equipment that remained in the restaurant: (1) "in-place" value, measuring the value of the equipment as a going concern; and (2) "salvage" value, measuring the value of the equipment if it were removed from the restaurant and sold.[2] The expert stated that the value of the equipment if left in place was $35,185 and the value of the equipment if removed and sold was $10,980. Lysenko urged the trial court to award damages based on the in-place value of the equipment. The Sawayas did not contest the expert's figures at trial but argued that Lysenko was not entitled to any damages. In the alternative, the Sawayas contended that the salvage value of the equipment was the proper measure of damages.

¶ 11 The court granted judgment to Lysenko. In its findings of fact and conclusions of law, the court stated that Central Bank had obtained a perfected security interest in the equipment and that its perfected security interest was properly assigned to Loosli and then to Lysenko. Moreover, Lysenko's perfected security interest entitled him to possession of the equipment, and by interfering with Lysenko's recovery attempts and receiving benefit from the continued use of the equipment, the Sawayas had converted the equipment.

¶ 12 The court determined, from the testimony of Lysenko's expert, that the value of the equipment if left in place in the restaurant was $35,185 and the value of the equipment if removed and sold was $10,980. Reasoning that the objective of damages for conversion is to compensate the plaintiff for "actual losses," the court concluded that Lysenko was entitled to $10,980, the salvage value of the equipment if it were removed from the restaurant and sold. In addition, the court determined that the value of Lysenko's equipment that HB Properties had discarded was $2000 and thus awarded a total of $12,980 to Lysenko as damages for conversion, plus prejudgment interest and costs.

¶ 13 Lysenko appealed to this court, and we transferred the matter to the court of appeals pursuant to Utah Code Ann. § 78-2-2(4) (1996). Before that court, Lysenko argued that he was entitled to the in-place value of the equipment because the equipment was still in place and in use at the restaurant.[3] The court of appeals disagreed and affirmed the trial court's decision to award salvage value. *See Lysenko v. Sawaya*, 1999 UT App. 031, ¶¶ 10–12, 973 P.2d 445. The court of appeals stated that "because the adequacy of a damage award is a factual question, we will not reverse the trial court's findings unless they are clearly erroneous," *id.* at ¶ 6, 973 P.2d 445, and then concluded that Lysenko failed to show that the trial court's decision to award salvage value rather than in-place value was clearly erroneous, *see id.* at ¶ 12, 973 P.2d 445. One judge dissented, contending that the proper measure of damages presented a question of law and that in-place value should have been awarded because the equipment was still in place and in use at the restaurant. *See id.* at ¶¶ 18–21, 973 P.2d 445 (Orme, J., dissenting).

---

1. Lysenko's former employee, Loosli, originally instituted this action. On October 3, 1996, prior to trial, Lysenko was substituted for Loosli as plaintiff by stipulation of the parties and order of the court.

2. According to traditional usage, "salvage" value (also referred to as "scrap" value) describes "[t]he value of an asset after it has become useless to the owner" or "the amount expected to be obtained when a fixed asset is disposed of at the end of its useful life." *Black's Law Dictionary* 1550 (7th ed.1999). The term "salvage" value is a misnomer in the instant case because Lysenko's expert employed the term to describe the fair market value that Lysenko's undamaged, usable equipment would have if removed from the premises. Nonetheless, to avoid confusion, we will use the term "salvage" value in this opinion for the limited purpose of describing the valuation measure offered by Lysenko and ultimately adopted by the trial court.

3. Lysenko did not appeal as to the trial court's award of $2000 for the equipment that HB Properties discarded.

¶ 14 Before this court on certiorari, Lysenko contends that the court of appeals applied an incorrect standard of review to the trial court's decision to award salvage value. He argues that the trial court's decision involved a legal question reviewable for correctness, and that since the equipment was still in place and in use, the proper measure of damages was in-place value.

## ANALYSIS

¶ 15 On certiorari, we review the decision of the court of appeals, not of the trial court. *See Esquivel v. Labor Comm'n*, 2000 UT 66, ¶ 11, 7 P.3d 777. Initially, we examine whether the court of appeals applied the correct standard of review to the trial court's decision to award the salvage value of Lysenko's equipment as damages for conversion. The court of appeals stated that Lysenko's request on appeal for in-place value instead of salvage value involved a dispute as to the "adequacy" of the trial court's damage award, which the court of appeals deemed a factual determination entitled to deference on appeal and not reversible absent clear error. *See Lysenko*, 1999 UT App. 031 at ¶ 6, 973 P.2d 445.

¶ 16 The court of appeals correctly noted that "the adequacy of a damage award is a factual question." *Id.* (citing *In re Knickerbocker*, 912 P.2d 969, 981 (Utah 1996)). However, the adequacy of the trial court's damage award was not at issue before the court of appeals. Indeed, Lysenko proffered evidence at trial, through his own expert, of the proper amount of damages awardable under either of two measures of damages, and the trial court's findings of fact incorporated both amounts. The question properly before the court of appeals was which *measure* of damages was appropriate, not the *adequacy* of the trial court's factual findings underlying the damage award. We therefore must determine whether the trial court's choice between the two measures of damages—in-place value and salvage value— involved a question of law or fact.

¶ 17 Questions of fact "are generally regarded as entailing the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind." *State v. Pena*, 869 P.2d 932, 935 (Utah 1994). Legal questions, in contrast, "are defined as those which are not of fact but are essentially of rules or principles uniformly applied to persons of similar qualities and status in similar circumstances." *Id.* Thus, to determine whether the measure of damages in the instant case presented the trial court with a legal question, as Lysenko argues, we must determine whether there is a "rule[ ] or principle[ ]" governing the measure of damages that can be "uniformly applied to persons of similar qualities and status in similar circumstances." *Id.*

¶ 18 As a general rule, the measure of damages for conversion is "the value of the property at the time of the conversion, plus interest." *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 531 (Utah 1993). In *McKeon v. Williams*, 312 Or. 322, 822 P.2d 699, 699–701 (1991), which, like the case before us, dealt with a landlord's conversion of a tenant's personal property that remained on the premises, it was held that the appropriate method for determining the value of property at the time of conversion depended upon whether the tenant had a right to possess the premises when the conversion occurred. In that case, tenants leased a building for the purpose of operating a restaurant. Before their lease terminated, the tenants closed the restaurant and eventually stopped paying rent to the landlord, who then filed an action for restitution of the building. The court determined that the tenants' right to possess the premises had ended and ordered them to turn over the building to the landlord. Thereafter, the tenants requested permission from the landlord to remove their restaurant equipment, but the landlord denied their request. The landlord then leased the building to a new tenant who operated a restaurant on the premises using the same equipment.

¶ 19 In an action that followed, the jury found that the landlord converted the tenants' equipment, and awarded damages to the tenants for the value of the converted equipment. The court instructed the jury that the proper measure of damages for con-

version was the "fair market value of the property *after removal* from [the landlord's] premises." *Id.* at 700 (emphasis added). On appeal, the tenants argued that they were instead entitled to the in-place value of the equipment because the landlord leased the building to a new tenant who continued to use the equipment.

¶ 20 The *McKeon* court affirmed, noting that the important factual distinction to be made is *when* the conversion occurred. Examining rulings from other state courts, the *McKeon* court concluded in this regard:

1. If a landlord converts a tenant's on-premises personal property while a tenant has the right to possess the premises, the measure of damages is the "in-place" fair market value of the converted property.

2. If a landlord converts a tenant's personal property left on the premises after the tenant's right to possession has ended, the measure of damages is the fair market value that the property would have, if removed from the premises.

*Id.* at 701 (citing *Stein v. McDonald,* 149 So.2d 77, 78 (Fla.Ct.App.1963) (awarding removal value when tenant attempted to remove property after right to possess premises ended); *Smyth v. Stoddard,* 203 Ill. 424, 67 N.E. 980, 982 (1903) (affirming award of in-place value of tenants' property when landlord sold premises before lease term expired); *Independence Flying Serv., Inc. v. Ailshire,* 409 S.W.2d 628, 629 (Mo.1966) (awarding in-place value when landlord converted property before lease terminated); *I. Tanenbaum Son & Co. v. C. Ludwig Baumann & Co.,* 261 N.Y. 85, 184 N.E. 503, 504–05 (1933) (awarding removal value when personal property was converted after right to possess premises ended)).

¶ 21 Leading treatises dictate the same method of measuring damages when a landlord converts a tenant's property that remains on the premises:

A landlord who refuses to permit a tenant to take his removable fixtures at the end of the term is liable to the tenant for the value of the fixtures as used property, i.e., in their dismembered state, rather than their value in place, because this is their maximum value to tenant if removal had been permitted.

2 Milton R. Friedman, *Friedman on Leases* § 24.2, at 1424 (4th ed.1997).

[W]hen the property so in place can no longer be there used by the owner and he is subject to summary removal its value will be estimated in case of conversion with reference to these facts; it will be estimated with reference to the condition in which the property will be when removed or as subject to the obligation or necessity of removal.

4 J.G. Sutherland, *A Treatise on the Law of Damages* § 1114, at 4231 (4th ed.1916), *quoted in McKeon,* 822 P.2d at 702.

¶ 22 This rule serves the fundamental purpose of compensatory damages, which is to place the plaintiff in the same position as if the tort had not been committed. *See* Restatement (Second) of Torts § 903 cmt. a (1979). If, on the one hand, the conversion occurs while the plaintiff is still entitled to possess the premises and use the personal property in place (or if the plaintiff is entitled to assign or sublet the premises, to sell the property in place to the assignee or sublessee), then the plaintiff is entitled to the value of the property in place. If, on the other hand, the plaintiff's right to occupy the premises has ended, such as after the termination of a lease, the plaintiff no longer possesses the right to use the personal property in place, but is entitled only to remove the property and sell it.

¶ 23 This rule of damages when a landlord converts a tenant's property left on the premises is "uniformly appli[cable] to persons of similar qualities and status in similar circumstances." *State v. Pena,* 869 P.2d 932, 935 (Utah 1994). As a result, the trial court's determination of the appropriate measure of damages in this case involved a legal determination, not a factual determination as the court of appeals concluded. The court of appeals thus erred when it applied a clearly erroneous standard of review to the trial court's conclusion of law when a correction-of-error standard was appropriate.

¶ 24 The court of appeals nevertheless reached the correct result. At the time of

the conversion, Lysenko was entitled only to remove the equipment from the premises because his sublease had been terminated. Therefore, the correct measure of damages was the value that Lysenko's equipment would have if removed. Accordingly, the court of appeals correctly affirmed the trial court's decision to award the equipment's salvage value. We thus affirm the court of appeals as to the result it reached but for the reasons stated in this opinion.

¶ 25 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Judge ALLPHIN concur in Associate Chief Justice RUSSON's opinion.

¶ 26 Having disqualified himself, Justice WILKINS does not participate herein; District Judge MICHAEL G. ALLPHIN sat.