2009 UT 81

**TRACO STEEL ERECTORS, INC., Plaintiff and Petitioner,**

v.

**COMTROL, INC., Defendant and Respondent.**

**No. 20080074.**

Supreme Court of Utah.

Dec. 11, 2009.

---

Stephen B. Doxey, Salt Lake City, for petitioner.

Cass C. Butler, Zachary T. Shields, Michael D. Stanger, Nathan R. Denny, Salt Lake City, for respondent.

## INTRODUCTION

NEHRING, Justice:

¶ 1 Petitioner Traco Steel Erectors, Inc. entered into two written subcontracts to provide steel erection work for Respondent Comtrol, Inc. on construction projects at Utah Valley State College and Weber State University. Disputes among the parties arose, and Traco eventually abandoned both projects prior to completion. Comtrol then invoked provisions of the subcontracts that allowed Comtrol to complete the steel erection work and charge Traco for costs incurred. Traco sued Comtrol for amounts it had not been paid under its subcontracts on both projects as well as amounts due on another project that is not at issue in this appeal. Comtrol counterclaimed for damages incurred in completing both projects as well as other damages not at issue in this appeal.

¶ 2 Several issues were resolved when the district court granted Comtrol's motion for partial summary judgment. The remaining issues were tested in a five-day bench trial. The district court judge issued forty-three pages of findings of fact and conclusions of law. The trial court awarded Comtrol net damages of $1,450.27 and $3,270.11 for the two projects.

¶ 3 Traco appealed. It claimed that the trial court erred in basing its damages award on the evidence presented by Comtrol to prove the actual costs incurred in completing Traco's work. Specifically, Traco appealed what it claimed was the trial court's implicit use of a published national average wage rate index titled the *R.S. Means Building Construction Cost Data* and testimony on average hourly rates from Comtrol employees as a baseline for calculating damages. The court of appeals held that the appeal was from a fact-bound issue and that Traco therefore had a duty to marshal the evidence surrounding the damages award. Traco did not marshal the evidence relating to the trial court's findings of fact on the issue of damages. The court of appeals therefore declined to reach the merits of the issue. Judge McHugh dissented.

¶ 4 Traco petitioned this court for certiorari review. We granted the petition to decide (1) whether the court of appeals erred in declining to address the merits of Traco's challenge to the trial court's determination of the measure of damages and (2) whether the court of appeals erred in affirming the district court's method of ascertaining the measure of damages. We hold that Traco had a duty to marshal the evidence surrounding the district court's calculation of the total damages sought because Traco's appeal challenges the strength of the evidence supporting the trial court's findings of fact. Traco failed to marshal the evidence surrounding the damages award and therefore the court of appeals did not err in declining to reach the merits of Traco's appeal to the damages award.

## BACKGROUND

¶ 5 Comtrol is a general contractor. Traco is a steel erection subcontractor. Comtrol and Traco entered into two written subcontracts pursuant to which Traco agreed to provide steel erection work for construction projects at Weber State University and Utah Valley State College.[1] Each of the subcon-

---

1. Traco and Comtrol entered into additional contracts for other projects that are not a part of this appeal.

tract agreements contained the following provisions:

> *Contractor's Right to do Subcontractor's Work:* If Subcontractor fails to supply sufficient forces, equipment or materials to advance the work according to Contractor's schedule, then Contractor may use its own forces, equipment, or materials to supply such portions of the work as are necessary to increase the rate of progress, and Contractor shall deduct the expense, with reasonable overhead and profit, from the Subcontractor price.

> *Default:* In the event that Subcontractor appears likely to be unable to complete its work according to Contractor's project schedule, or if Subcontractor fails to fully perform its duties under this Subcontract, or if Subcontractor becomes insolvent, or fails to supply sufficient forces to maintain this schedule, or is guilty of any other default under this Subcontract, then Contractor may (a) withhold payment for work performed under the Subcontract and withhold payment of any other obligation of Contractor to Subcontractor; (b) after giving 48 hours written notice to Subcontractor, eject Subcontractor and take over Subcontractor's work and terminate Subcontractor's right to perform under the Subcontract. If Contractor takes over Subcontractor's work, then Contractor will charge Subcontractor for all costs incurred as a result, including reasonable overhead and profit and including attorney's fees and other expenses. If the total amount exceeds the unpaid balance of the Subcontract, then Subcontractor shall pay the difference to Contractor. If the amount is less than the unpaid balance of the Subcontract, the excess shall be paid by Contractor to Subcontractor.

¶ 6 Following a payment dispute between Traco and Comtrol, Traco abandoned both the UVSC project and the Weber State project before completing either. Comtrol gave Traco a written forty-eight hour notice to return to work on the UVSC project and to perform its contract obligations. Comtrol advised Traco that if it did not return, Comtrol would charge Traco for the cost of completing Traco's work. Traco did not return to the UVSC project. Traco later abandoned the Weber State project because of contract disputes. Comtrol notified Traco it would invoke its rights under the subcontracts to perform the agreed upon work on both projects and back charge Traco for the costs incurred. Traco sent Comtrol written notice that it was abandoning the projects.

¶ 7 Comtrol completed the projects by using its own labor force and subcontracting with a skilled welder instead of hiring another steel erection company. Comtrol invoked the subcontract provisions that allowed Comtrol to .charge Traco the actual costs and overhead for this work. Traco sued Comtrol for the amounts unpaid under the contracts on both projects, and Comtrol counterclaimed to recover the costs it incurred in completing the two projects.

¶ 8 At trial, Comtrol successfully introduced into evidence the *R.S. Means Building Construction Cost Data: 2001 Western Edition* (Phillip R. Waier ed., 14th ed.2001). This document is an index of average wages and costs for skilled structural steelworkers and equipment in the western United States. The R.S. Means averages contractors' percentage mark-ups applied to base labor rates to arrive at typical billing rates for skilled and unskilled labor as well as the cost of equipment. The average also combines the base labor rates based on union wages averaged over twenty major western U.S. cities, the average worker's compensation rates for thirteen western U.S. states, and the fixed averages for all trades.

¶ 9 Comtrol submitted the hourly rate of $50.68 found in the R.S. Means average as the rate that the employees hired by Comtrol to complete Traco's work were actually paid. Comtrol applied this average rate to all hours worked by Comtrol employees in completing Traco's work on the two projects. Comtrol also added ten percent overhead and ten percent profit for a total hourly labor rate of $60.82. Comtrol argued at trial that the cost of completing Traco's work for both projects was much higher than the hourly wages paid to the workers because the cost included the equipment and fuel expenses as well as additional burden costs, such as workers' compensation insurance, general liability

insurance, and overtime pay. Traco did not appeal the propriety of the trial court's evidentiary ruling concerning the admissibility of the R.S. Means average.

¶ 10 Comtrol's president, Brian Burk, testified that the R.S. Means average accurately reflected the actual cost Comtrol incurred to perform the work Traco abandoned. Sharon Zobel, the secretary and payroll manager for Comtrol, testified that Comtrol normally paid laborers $20 an hour and supervisors $30 an hour and that Comtrol incurred a thirty-five percent labor burden to cover required taxes, social security, and insurance for each employee. In an attempt to rebut this testimony, Traco highlighted perceived inconsistencies between Mr. Burk's trial and deposition testimony. Traco also subpoenaed Comtrol's payroll records. The trial court quashed the subpoena because Traco failed to request the records before the close of the discovery deadline.

¶ 11 The trial court found Comtrol owed Traco $7,449.39 for amounts unpaid on the UVSC project and $46,942.39 for amounts unpaid on the Weber State project. Comtrol presented exhibits to the court demonstrating, through use of the R.S. Means average, that the charge to Traco should total $17,279.73 for the UVSC project and $58,212.50 for the Weber State project. However, the trial court instead awarded Comtrol $8,900.00 on the UVSC project and $50,212.50 on the Weber State project. The court arrived at these numbers after adjusting for duplicate charges and for what the court found to be excessive rates and hours to achieve a "reasonable fair market value amount to complete Traco's work." The trial court's adjustments resulted in a net judgment for Comtrol of $1,450.27 and $3,270.11 for the projects, to which it added interest, court costs, and $58,549.75 in attorney fees.

¶ 12 Following the trial court's order, Traco appealed several issues. Of importance to this appeal, Traco contented that the trial court improperly relied on the R.S. Means average and oral testimony to establish the costs Comtrol actually incurred to complete Traco's steel erection work. *Traco Steel Erectors, Inc. v. Comtrol, Inc.*, 2007 UT App 407 ¶¶ 40, 42, 175 P.3d 572. The court of appeals ruled that the trial court's calculation of damages was a question of fact and that Traco was therefore required to marshal the evidence surrounding the damages award in order to seek appellate review. *Id.* ¶¶ 41–43. Since Traco failed to marshal the evidence surrounding the award of damages, the court of appeals declined to address whether the trial court erred in its calculations of the amount Traco owed Comtrol. *Id.* ¶ 43. Judge McHugh dissented, reasoning that whether the trial court properly considered the R.S. Means average was a question of law and therefore not subject to the marshaling requirement. *Id.* ¶ 54.

¶ 13 We granted certiorari to determine (1) whether the court of appeals erred in declining to address the merits of Traco's challenge to the district court's determination of the measure of Comtrol's damages and (2) whether the court of appeals erred in affirming the district court's method of ascertaining the measure of Comtrol's damages. We have jurisdiction over this appeal pursuant to Utah Code section 78A–3–102(3)(a)(2008).

## STANDARD OF REVIEW

¶ 14 On certiorari, we review the decision of the court of appeals, not the trial court. *Lysenko v. Sawaya*, 2000 UT 58, ¶ 15, 7 P.3d 783. We review the decision of the court of appeals for correctness, and give no deference to its conclusions of law. *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 12, 61 P.3d 1009.

## ANALYSIS

¶ 15 This appeal presents us with the following two issues: (1) whether Traco was required to marshal the evidence surrounding the award of damages to Comtrol in order to challenge the measure of damages and (2) whether the court of appeals erred in affirming the trial court's method of ascertaining the measure of Comtrol's damages. We conclude that Traco's appeal from the damages award was an appeal from a finding of fact, which required Traco to marshal the evidence surrounding the damage award. Because Traco failed to marshal the evidence, the court of appeals correctly declined

to address the merits of Traco's challenge to the damages award. We also conclude that the court of appeals did not err when it affirmed the trial court's method of ascertaining the measure of damages.

## I. THE COURT OF APPEALS PROPERLY DECLINED TO REVIEW TRACO'S CHALLENGE TO COMTROL'S DAMAGES AWARD BECAUSE TRACO DID NOT FULFILL ITS DUTY TO MARSHAL THE EVIDENCE

¶ 16 The first issue before us is whether the court of appeals erred in declining to address the merits of Traco's challenge to the trial court's determination of the measure of damages. The court of appeals declined to address the merits of the particular issue because it found that "[t]he trial court's calculation of damages is clearly fact sensitive" and Traco had an obligation to marshal the evidence presented on Comtrol's damages in order for the court to "reconsider the weight and strength of that evidence." *Traco Steel Erectors, Inc. v. Comtrol, Inc.*, 2007 UT App 407, ¶¶ 40, 42, 175 P.3d 572. We agree that Traco's appeal of the trial court's determination of the measure of damages is a challenge to the weight of the evidence supporting the damages award and is therefore an appeal from a finding of fact by the district court.

¶ 17 "A trial court's findings of fact will not be set aside unless clearly erroneous." *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177. To establish that a factual finding is clearly erroneous, the appealing party must "marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *State v. Clark*, 2005 UT 75, ¶ 17, 124 P.3d 235 (internal quotation marks omitted); *see also* Utah R.App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."). "If the evidence is inadequately marshaled, this court assumes that all findings are adequately supported by the evidence." *Chen*, 2004 UT 82, ¶ 19, 100 P.3d 1177.

¶ 18 We stated in *Lysenko v. Sawaya* that "[q]uestions of fact 'are generally regarded as entailing the empirical, such as things, events, actions, or conditions happening, existing, or taking place, as well as the subjective, such as state of mind.'" 2000 UT 58, ¶ 17, 7 P.3d 783 (quoting *State v. Pena*, 869 P.2d 932, 935 (Utah 1994)). We have previously noted that "the adequacy of a damage award is a factual question." *Id.* ¶ 13 (internal quotation marks omitted). In contrast, the measure used to calculate damages is a question of law. *See Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 25, 96 P.3d 893. Therefore, appeals from the adequacy of a damages award are appeals from factual questions, which obligate the appealing party to marshal the evidence before an appellate court may review the district court's award.

¶ 19 Traco does not contend that it sufficiently marshaled the evidence surrounding the damages award. Instead, it argues that it was not obligated to marshal the evidence because its appeal challenges whether the trial court used the correct measure of damages in calculating the awarded damages and therefore is an appeal based on a question of law. Traco relies on *Lysenko* as support for its contention that its appeal to the damages award was actually a challenge to the method used by the trial court and not the sufficiency of the evidence underlying the damages award.

¶ 20 We find, however, that *Lysenko* demonstrates exactly why Traco's appeal of the damages award was exclusively an appeal of the sufficiency of the evidence underlying the trial court's factual finding. In *Lysenko*, we addressed whether the court of appeals had applied the proper standard of review to an appeal from a damages award. 2000 UT 58, ¶¶ 15–16, 7 P.3d 783. Although *Lysenko* stands for the proposition that a district court's use of a measure of damages is a question of law, *id.* ¶ 16, the issue in *Lysenko* was the trial court's proper selection of one of two properly presented measures of damages for a claim of conversion, not the sufficiency of evidence presented to support either measure of damages. *Id.* ¶ 23. In contrast, the case before us does not involve

two or more alternative formulae advanced as candidates to properly calculate damages, but a sizeable mass of evidence that the trial court was required to sift and weigh in aid of reaching a lawful result.

¶ 21 Although Traco claims its appeal is based on the measure or method used by the trial court, the appeal essentially relies on the argument that the evidence presented was not sufficient to prove the costs Comtrol actually incurred. Traco's appeal does not allege that the trial court selected an improper formula or framework for a determination of damages, but rather challenges the types of evidence the court considered in using the formula to calculate damages. Whether the trial court calculated the damages award within the framework dictated by the subcontracts, which in this case is "actual costs incurred," is a question of law. In contrast, a challenge to whether the R.S. Means average along with testimony explaining the legitimacy of the R.S. Means data as reflective of Comtrol's actual costs is a challenge to the quality of the evidence and not to the formula used to calculate damages. The court of appeals was correct, then, when it concluded that the trial court's damage determination was a question of fact.

¶ 22 Judge McHugh's dissent contends that Traco did not have an obligation to marshal the evidence because "the issue of whether average national hourly rates rather than evidence of the actual costs of completing the work could be used to prove Comtrol's damages is an issue of law." *Traco*, 2007 UT App 407, ¶ 54, 175 P.3d 572 (McHugh, J., dissenting). It asserts that as part of its burden to prove a prima facie case of breach of contract, Comtrol was required to provide the best evidence of what it actually spent in completing Traco's work and that failure to do so foreclosed its claim to damages as a matter of law. *Id.* ¶ 58.

¶ 23 We disagree. That Comtrol was obligated to prove damages as part of its prima facie case and that the subcontracts only allowed damages in the amount of costs actually incurred is true. "A prima facie case has been made when evidence has been

received at trial that, in the absence of contrary evidence, would entitle the party having the burden of proof to judgment as a matter of law." *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388. We are aware of no authority however that restricts evidence that may be used to prove contract damages to primary documentation of actual cash outlays to workers or suppliers, or that failure to do so results in a failure to present a prima facie case of damages.

¶ 24 As a general matter, "the desired objective is to evaluate any loss suffered by the most direct, practical and accurate method that can be employed." *Even Odds, Inc. v. Nielson*, 22 Utah 2d 49, 448 P.2d 709, 711 (1968). Judge McHugh concluded in her dissent that Comtrol's damages evidence did not meet this standard. At its core, the skirmish over the R.S. Means average is over its status as evidence. The dissent labels the R.S. Means data "irrelevant." The question of whether the dissent's assessment is correct is both intriguing and immaterial. Comtrol offered the data into evidence. Traco objected to the admission of the exhibit on grounds of foundation, not relevancy. The trial court overruled the objection and received the exhibit. Traco elected not to appeal the trial court's evidentiary ruling. An appellate court is ill-equipped to find that the evidence used to support a damages award was not the best available. The central inquiry is whether the evidence was sufficient; not whether it was perfect.

¶ 25 As the court of appeals briefly indicated, the evidence presented to the trial court does not suggest that anything other than amounts actually incurred, the proper measure of damages in this case, was presented to the court as an alternative measure of damages. This evidence included the R.S. Means average, testimony from Ms. Zobel concerning the average rate paid to workers, and testimony from Mr. Burk stating that the R.S. Means average actually reflected the costs incurred to Comtrol in completing Traco's work.[2] For instance, Mr. Burk testified

2. The court also received evidence from the welding subcontractor hired by Comtrol to complete a portion of Traco's work that his rate was between $50 and $60 per hour.

that he derived hourly rates for trades from the R.S. Means and adjusted it to account for workers' compensation insurance and fixed overhead. When asked if based on his "experience in the construction industry and knowledge of Comtrol's expenses, do you believe this rate of $50.68 accurately reflects the true cost to Comtrol," Mr. Burk replied "yes." Traco's appeal can thus only be interpreted to be an appeal from the sufficiency of the admitted evidence and not an appeal alleging that the court applied any other standard of damages than costs actually incurred.

¶ 26 In our view, the record leaves no room to doubt that reasonable minds might believe from a preponderance of the evidence that the damages presented by Comtrol through time cards, the R.S. Means average, and testimony were actually suffered. *See Darger v. Nielsen,* 605 P.2d 1223, 1225 (Utah 1979) ("Defendant presented a prima facie case of its damages, and plaintiff did not present evidence that [the] charges were unreasonable, or that defendant could have had the [structure] finished at a lower price."). Had Traco timely subpoenaed Comtrol's payroll records, it is possible that such payroll records may have contradicted the evidence presented by Comtrol. Unfortunately, Traco failed to timely subpoena the payroll records and presented no other evidence, besides conflicting deposition testimony and deposition exhibits, that the hourly rate of $50.68 did not reflect the actual costs incurred for the labor and machinery required to complete Traco's work.

¶ 27 We hold, therefore, that Traco's appeal of the damages award was an appeal from the sufficiency of the evidence underlying the damages award. The court of appeals did not err when it declined to reach the merits of Traco's claims. As the court of appeals would not perform its own review of the record, we too decline to determine whether the evidence presented to the trial court was sufficient to support the damages award.

## II. THE COURT OF APPEALS DID NOT ERR IN AFFIRMING THE DISTRICT COURT'S METHOD OF DETERMINING DAMAGES

■ ¶ 28 Today we affirm the court of appeals' holding that Traco had an obligation to marshal the evidence underlying the damages award and failed to do so. This court also granted certiorari to address whether the court of appeals erred in affirming the trial court's method of ascertaining the measure of damages. We interpret "method of ascertaining the measure of damages" to mean the formula or method selected by the trial court to establish the framework in which particular damages must be shown. As stated in Part I of this opinion, "[w]hether the district court applied the correct rule [or method] for measuring damages is a question of law." *Mahana v. Onyx Acceptance Corp.,* 2004 UT 59, ¶ 25, 96 P.3d 893.

¶ 29 The court of appeals did not address the method of damages the trial court employed in its opinion. *Traco Steel Erectors, Inc. v. Comtrol, Inc.,* 2007 UT App 407, ¶ 40, 175 P.3d 572. Traco argues this was error. Traco contends that the trial court did not apply the right method of damages because the trial court's order refers to the fair market value of the work and not the actual costs incurred by Comtrol. The trial court stated in its order that the total damages claimed by Comtrol reflected rates that exceeded "standard reasonable rates" and hours that were "excessive and unreasonable." The trial court subsequently found $8,900.00 for the UVSC project and $50,212.50 for the Weber State project "to be a reasonable fair market amount to complete Traco's work."

¶ 30 In this case, the proper measure of damages is found in the contract language allowing Comtrol to recover the "actual costs incurred" in completing Traco's work.[3] That

---

**3.** The subcontracts themselves entitled Comtrol to recover costs incurred. We disagree with the court of appeals' dissent's insistence that "incurred" unambiguously means what Comtrol "actually spent to finish the work." The primary dictionary definition of "incur" is "to become liable or subject to." *American Heritage Dictionary,* 653 (2d ed. 1985). "Incur" quite unambiguously does not imply anything about discharging the liability. Thus, what Comtrol "actually spent" is irrelevant to whether it actually "incurred" costs.

a party can recover the costs required to repair a breach of contract is also reflected in our case law as pointed out by Judge McHugh's dissent. *Id.* ¶ 56; *see also Darger v. Nielsen,* 605 P.2d 1223, 1225 (Utah 1979) ("The measure of damages for such a breach is the excess of the cost of completi[on] . . . over what defendant would have paid under the contract."); *Stangl v. Todd,* 554 P.2d 1316, 1320 (Utah 1976) ("The contract breaker should pay the cost of construction and completion in accordance with his contract."). The trial court selected the proper measure of damages.

¶ 31 Although the trial court impliedly considered reasonableness in its determination, a factfinder's consideration of the reasonableness of cost of completion in a construction performance context is not inappropriate as a matter of law. *See Darger,* 605 P.2d at 1225 ("Defendant presented a prima facie case of its damages, and plaintiff did not present evidence that [the party hired to complete the work's] charges were unreasonable, or that defendant could have had the [work] finished at a lower price."); *see also* 11 Joseph M. Perillo, *Corbin on Contracts* § 60.1 (rev. ed.2005) (stating, "for a total breach by refusal and failure to complete the work, the injured party can usually get a judgment for damages measured by the reasonable cost of reconstruction and completion in accordance with the contract."). The trial court's reference to fair market value, therefore, is not incorrect as a matter of law.

¶ 32 A determination of what measure of damages is reasonable will depend on the agreement between the parties, the particular circumstances, the applicable industry, and the evidence presented. Although Traco now argues that the trial court used improper evidence to determine reasonableness, Traco's failure to marshal the evidence surrounding the damages award precludes appellate review of that contention. The court of appeals did not err in failing to address whether the evidence supports the costs awarded because Traco failed to marshal the evidence.

## CONCLUSION

¶ 33 Damages awards in construction cases stemming from a breach of a subcontract are often fact intensive and require diligent attention to the costs incurred by both parties. While an appeal from the measure or formula of damages used by a trial court to determine damages is a question of law, an appeal from the types of properly admitted evidence upon which the trial court applies the formula is an appeal from a question of fact. An appeal from a question of fact requires the appealing party to marshal the evidence. In this case, Traco failed to marshal the evidence and therefore the court of appeals did not err in declining to review the merits of Traco's challenge to the trial court's determination of damages. The court of appeals also did not err in affirming the trial court's method of ascertaining the measure of damages. The court of appeals implicitly determined that the trial court determined damages by taking into account the actual costs incurred to Comtrol with any evidence suggesting the actual costs presented were not reasonable. This was not error. We therefore affirm the decision of the court of appeals.

¶ 34 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.