# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-02013-SCT

*INN BY THE SEA HOMEOWNER'S ASSOCIATION, INC.*

*v.*

*SEAINN, LLC, DRACE CONSTRUCTION CORP., CARUBBA ENGINEERING, SOUTHERN CROSS CONSTRUCTION COMPANY, HARRY BAKER SMITH ARCHITECTS II, PLLC AND GREG STEWART*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2013 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| TRIAL COURT ATTORNEYS: | DAVID C. GOFF |
| | ADAM STONE |
| | NICHOLAS VAN WISER |
| | THOMAS L. CARPENTER |
| | WILLIAM J. LITTLE, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROSS DOUGLAS VAUGHN |
| | JOSEPH L. McREYNOLDS |
| | DAVID C. GOFF |
| ATTORNEYS FOR APPELLEES: | NICHOLAS VAN WISER |
| | KAYTIE MICHELLE PICKETT |
| | ADAM STONE |
| | THOMAS LYNN CARPENTER, JR. |
| | VINCENT AUGUST NOLETTO, JR. |
| | CARTER R. HALE |
| | LEAH NICHOLS LEDFORD |
| | WILLIAM J. LITTLE, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 07/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     This action was brought by Inn By the Sea Homeowner's Association, Inc. ("IBTS") against various defendants involved in the development, design, and construction of Inn By the Sea Condominiums in Pass Christian when the condominiums were rebuilt after they were destroyed by Hurricane Katrina. Within a year of reconstruction, significant problems with the building began to manifest, problems allegedly related to defects in the design and construction of the property. The trial court granted summary judgment to the defendants after excluding the damages testimony of IBTS's expert witnesses. We find that the trial court did not abuse its discretion in excluding the plaintiff's witnesses, and therefore affirm the grant of summary judgment.

## FACTS AND PROCEEDINGS BELOW

¶2.     According to IBTS, the appellant-plaintiffs, Inn By the Sea Condominiums began showing signs of significant structural defects within a year of the issuance of the Certificate of Occupancy in 2009. ITBS sued the developer, various contractors, the structural engineer, the architect, and ten John Does as "unknown persons that provided material services, acted in a supervisory capacity, or were otherwise involved in the construction of the Condominiums."[1] The parties entered into an Agreed Scheduling Order on March 3, 2012, with a trial date set for December 3, 2012. IBTS hired Michael Bailey of Kyle Associates, LLC, as its expert structural engineer and Alfred Hayes of Hayes Architect as its expert

---

[1]Prior to filing suit, IBTS sent notice of the defects and a request for timely repairs to the developer and general contractor pursuant to the requirements of Mississippi's New Home Warranty Act. See Miss. Code Ann. §§ 83-58-1 to 83-58-17 (Rev. 2011).

architect to investigate and identify defects in the design and construction of the property. IBTS timely designated these experts on June 16, 2012, and produced a copy of the witnesses' reports and cost estimates. Bailey estimated costs to correct engineering design defects to be $1,830,000. Hayes identified twenty-three design and construction defects which he estimated would cost $1,322,000 to repair. He subsequently updated his report in August 2012 and revised his repair estimate to $2,689,000 for the twenty-three identified defects. His report contained a description of each defect and a rounded, ballpark cost estimate to repair each defect. For example, Item Two states:

> 2. Condenser Equipment is installed on wood sleepers with pieces of roofing used as straps. This is not complying with code wind loading. Equipment should be installed on structural curbs flashed into the roof or rated equipment racks with pipe legs that can be flashed into roofing system. Design/Negotiation and Construction Observation Fee $3,000.00. *Construction Cost $100,000.* E&O Item 1 and 5.

(Emphasis added.) The description of each defect ended similarly with a cursory rounded statement of the construction cost.

¶3.     In late August 2012, IBTS learned that Michael Bailey had suddenly left his job, moved out town, and could not be located or further made available as an expert on this case. At a hearing on September 12, 2012, the trial court orally continued the case without a new trial date in order for IBTS to find a new engineering expert. IBTS hired Ashton Avegno, a retired principal of Kyle Associates and a structural engineer with more than forty years of experience to replace Bailey. Avegno provided his report on November 2, 2012. In addition to largely agreeing with Bailey's original report, Avegno also expressed concern that the foundation pilings "as designed" were overloaded by as much as "2.82 times its safe capacity

3

and the as built piling would be loaded 2.16 times its capacity." He recommended that a "pile load test . . . be done at the site using the same size and length pile as the existing."

¶4. Avegno was unwilling, however, to provided exact itemized cost estimates for the items of engineering defects he identified. He estimated a total repair budget for all items between "$1,660,000 and $4,020,000." He openly stated that the "costs provided here are my best estimates" but that he was "not a qualified estimator or contractor and therefore cannot be liable for the accuracy of these numbers. If more accurate numbers are needed then a licensed contractor or cost estimator should be engaged to provide them."

¶5. Also on November 2, 2012, IBTS filed a Motion for Trial Setting and Scheduling Order, proposing a trial date of April 15, 2013, with deadlines for the plaintiff's experts to be designated by November 8, 2012, and the defendant's experts to be designated by December 7, 2012. IBTS informed the court that IBTS had been unable to depose any of the defendants' witnesses, including any of the defendants, and that the new scheduling order should be issued to allow IBTS to conduct depositions and to seasonably supplement its expert reports. The defendants objected to the proposed new scheduling order, arguing that the deadline for expert designations had passed and that Avegno should not be allowed to offer any new opinions, including his opinion that the foundation piles were overloaded.[2]

¶6. The court heard IBTS's motion for a new scheduling order on December 21, 2012. It granted IBTS's motion to depose the defendants but limited IBTS's right to supplement

---

[2] IBTS also filed a Mississippi Rule of Civil Procedure 9(h) motion on December 5, 2012 to substitute two of the "John Does" with Nosidam of Mississippi, Inc., and Greg Steward d/b/a Madison Homes. The court denied this motion.

its expert reports based only information learned in the depositions and excluding new information learned from the test piles recommended by Avegno. The court reset trial for August 12, 2013, and established new deadlines for completion of discovery by April 12, 2013, with dispositive or **Daubert**[3] motions to be filed by May 13, 2013.

¶7.   IBTS filed a motion for clarification or reconsideration on January 11, 2013, arguing that the defendants would not be prejudiced by a more extensive expert supplementation given the new trial date, new discovery deadlines, and the fact that the defendants had been on notice of potential structural defects in the foundation piles since November 2, 2012. The court denied IBTS's motion for reconsideration (among other motions) after a hearing on March 14, 2013. IBTS had supplemented its motion for reconsideration, pointing out that, in the February 2012 deposition of defendant Carubba Engineering, Carubba had acknowledged that it had not used any pile load tests or geotechnical reports to verify load capacity or soil conditions at the construction site. Rather, despite having written on three separate occasions to the project architect that a pile load test was needed, he ultimately used a safe allowable load for his calculations "from my experience as a design engineer in these types of soils." IBTS argued that, since the court's previous order permitted supplementation of the expert report with evidence obtained from the depositions, opinions on the piles and the results of the pile tests should appropriately be allowed.[4]

---

[3]**Daubert v. Merrell Dow Pharms., Inc.**, 509 U.S. 579, 113 S.Ct. 2786, 125 L. Ed 2d 469 (1993)

[4]While acknowledging that the court had ruled not to allow the formal supplementation of expert testimony with opinions on the piles, IBTS circulated a copy of Avegno's April 9, 2013, supplemental report, based on the results of the test piles, which

5

¶8. The court held a hearing on July 30, 2013, to hear eighteen separate *in limine* motions, including ***Daubert*** and dispositive motions. Included were defense motions to exclude the expert testimony of Hayes and Avegno under Mississippi Rule of Evidence 702. The defendants asserted that Hayes had failed to offer detailed support or explanation for his opinion on construction repair costs, and that Avegno was, by his own admission, not qualified to provide any opinion on costs. IBTS argued that the court should defer ruling on the reliability of the experts' costs estimates until trial, when it would have the benefit of their testimony.

¶9. The court granted the motion to exclude Avegno from testifying as to monetary damages, finding that he was not qualified by his own admission and that he had declined to permit supplementation of his report to provide the basis for his cost estimates.

¶10. However, the Court denied the motion to exclude Hayes's damages testimony, and at the request of the defense continued trial and ordered Hayes to supplement his report. The court denied both parties' motions for summary judgment at that time. The order stated in relevant part:

> Furthermore, this Court holds that the Inn is granted two weeks from the date of this hearing, which is August 13, 2013, in which to provide Alfred Hayes'[s] summary of the grounds for each opinion relating to cost. This Court will then take up any motions pertaining to that supplementation if any such motions are needed.

> This Court further continues this case from its August 12, 2013 setting, to a time convenient for this Court and the parties.

confirmed that the foundation piles were indeed overloaded. He opined that as many as 110 additional piles would be needed to stabilize the foundation, at a cost ranging between $500,000 and $800,000.

6

¶11. In response to the trial court's order for supplementation, Hayes added a ten-paragraph affidavit with exhibits to his report. He identified the RS Means Construction Cost Data as the basis for his cost estimates. He asserted that RS Means is "the most used and respected guide available to the construction industry" and that the RS Means "method of estimating is widely accepted as one of the most accurate forms of pricing available."

¶12. Hayes attached an Exhibit B demonstrating a "step by step analysis" of how he used RS Means to estimate the cost as applies to the roof replacement item, which was the third of the twenty-three items identified as structural design defects in his report. He further asserted that each "of the enumerated items in my report [is] contained within [M]eans and [was] researched for Inn By the Sea." Hayes used a 2008 version of RS Means to select the data used to calculate the repair estimate.

¶13. The defendants moved to strike Hayes's supplementation and renewed their motion for summary judgment. The court granted the defendants' motion to exclude Alfred Hayes's damages testimony as well as the defendant's motion for summary judgment and final judgment on October 31, 2013. The order stated in part:

> Plaintiff filed his supplementation at 11:07 PM, on August 13, 2013, the last day of the two week period. The supplementation included calculations on only one of the 24 cost items . . .

> Thus, the Court finds that the Defendants are in no better position than they were on August 12, 2013. The substance and details supporting the damage estimates should have been disclosed, and this Court ordered them disclosed. This disclosure ordered by this Court extended to all calculations and methodology used to reach estimates for all 24 cost items, but were only provided for Cost Item No. 3. This Court finds that as to Number 3, which calculations were derived from an obsolete manual, the 2008 edition of RS Means, is unreliable.

. . . This Court grants the Defendants' motion to exclude the testimony of Fred Hayes as to his damages calculations. This Court notes that as a result, there are no damages estimates left for the Plaintiff to present as evidence in this trial. Accordingly, summary judgment is granted as to all defendants in this cause of action.

¶14. Below is a timeline summary of the major pretrial events in this litigation:

| | |
|---|---|
| March 2012 | Original Agreed Scheduling Order entered with trial date of Dec 3, 2012. |
| June 2012 | IBTS's timely initial disclosure of experts and expert reports. |
| August 2012 | IBTS's structural expert Bailey disappears; trial continued without date. |
| November 2012 | Avegno designated as replacement for Bailey, recommends test piles; IBTS proposes new scheduling order and trial date. |
| December 5, 2012 | IBTS files motion to substitute two new parties under M.R.C.P. 9(h) |
| December 21, 2012 | Hearing held in which court grants IBTS's motion to depose defendants but limits expert supplementation to new information gained in depositions; excludes any future test pile results or testimony. Trial set for August 12, 2013 |
| March 14, 2013 | Court hears and denies IBTS's motion to reconsider limitation of expert supplementation of pending test pile results considering Carubba's deposition testimony regarding foundation piles. |
| April 9, 2013 | IBTS circulates proposed supplementation of Avegno's expert report including the results of the test pile indicating that piles are overloaded and as many as 110 additional piles would be needed to stabilize the foundation, at a cost ranging between $500,000 and $800,000. |

| | |
|---|---|
| July 30, 2013 | Trial continued without new trial date at request of defendants to require supplementation of Hayes's expert report by August 13, 2013, "to provide Alfred Hayes's summary of the grounds for each opinion relating to cost." Avegno excluded from testifying as to cost damages due to his statement in his initial report that he was not a qualified cost estimator. |
| August 13, 2013 | Hayes supplements report with ten-paragraph affidavit and Exhibit B with itemized calculations for Item 3 roof repairs. (Exhibit A describes the 2008 RS Means Construction Costs Data. The parties agree that RS Means is generally reliable; the defendants object to the use of the 2008 version as outdated). |
| October 31, 2013 | Court excludes Hayes's testimony on damages as unreliable and grants summary judgment to the defendants due to lack of proof of damages. |

Inn By the Sea timely appealed. Because we find the question of whether IBTS's experts were properly excluded dispositive, we do not address the other issues raised by IBTS on appeal.

## DISCUSSION

¶15.    This Court reviews grants of summary judgment *de novo*. **Smith ex rel. Smith v. Gilmore Mem'l Hosp., Inc.**, 952 So. 2d 177, 181 (Miss. 2007). The evidence will be reviewed in the light most favorable to the party opposing summary judgment. **Bowie v. Montfort Jones Mem'l Hosp.**, 861 So. 2d 1037, 1041 (Miss. 2003). Rulings regarding the admissibility of expert testimony are reviewed for abuse of discretion. **Miss. Transp. Comm'n v. McLemore**, 863 So. 2d 31, 40 (Miss. 2003).

**WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING THE EXPERT DAMAGES TESTIMONY OF ALFRED HAYES AND ASHTON AVEGNO.**

¶16. IBTS argues that the trial court abused its discretion in excluding Hayes's expert testimony regarding cost damages. Hayes's qualifications and the relevance of his testimony are not in question. Rather, the defendants successfully challenged the reliability of Hayes's method and his failure to disclose the basis of the majority of his cost opinions. Mississippi Rule of Evidence 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Mississippi Rule of Civil Procedure 26(b)(4)(A)(I),

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

¶17. The reliability of expert testimony is analyzed under the nonexhaustive factors adopted from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L. Ed 2d 469 (1993), which include:

> (1) whether the expert's theory can be or has been tested;

> (2) whether the theory has been subjected to peer review and publication;

> (3) the known or potential rate of error of a technique or theory when applied;

> (4) the existence and maintenance of standards and control; and

> (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Miss. Transport. Comm'n v. McLemore*, 863 So. 2d at 37 (Miss. 2003). The *Daubert* test is not meant to be so tightly applied that it replaces traditional methods for challenging "shaky, but admissible" expert testimony, through "[v]igorous cross examination, presentations of contrary evidence, and careful instruction on the burden of proof." *Id*. at 37. "The threshold for admissibility is not great, keeping in mind the fact that Mississippi Rule [of Evidence] 401 favors the admission of evidence when it has probative value." *Utz v. Running & Rolling Trucking, Inc.*, 32 So. 3d 450, 457 (Miss. 2010).

¶18.    Seasonable supplementation of expert testimony is required under the guidelines of Mississippi Rule of Civil Procedure 26(f). The function of the supplementation requirement is to fairly inform the opposing party of the evidence against it with an opportunity to meet it and to avoid "trial by ambush." *Hyundai Motor Am. v. Applewhite*, 53 So. 3d 749, 758 (Miss. 2011). Defendants are entitled to supplementation on "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony . . . . A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses." M.R.C.P. 26(f)(1) & (3).

¶19.    Multiple reliable methods of calculating construction damages are available to experts depending on the nature of the cause of action and best evidence available of the underlying facts and data. *See* Schwartzkopf & McNamara, *General Methods of Damage Calculation*, Calc. Constr. Dmgs. § 1.03 (2014). What matters on a case-by-case basis is adherence to the principles of Mississippi Rule of Evidence 702 and Mississippi Rule of Civil Procedure 26,

11

and, in particular, adherence to the requirement that experts disclose the basis of their opinions with sufficient specificity to allow defendants to prepare a defense and avoid trial by ambush. Cost estimates do not have to be presented with mathmatical certainty; rather, sufficient evidence should be presented so that the trier of fact can determine damages within a reasonable certainty.

¶20.    In *Sumrall Church of Lord Jesus Christ v. Johnson*, 757 So. 2d 311 (Miss. Ct. App. 2000), our Court of Appeals found the appropriate measure of damages was the actual repair cost that already had been incurred by the plaintiff in fixing the deficiencies of the electrical contractor. We affirmed the reliability of repair-cost estimates in *Hoover v. United Services Auto. Association*, 125 So. 3d 636 (Miss. 2013), where a qualified expert "used a cost-plus estimate based on known values to arrive at his calculations. He assessed that it would cost $40 per square foot to replace the roof, and multiplied this by the total square footage of the house." *Id*. at 645.

¶21.    Of particular significance is our unanimous decision in the products liability case *Hyundai Motor America v. Applewhite*, 53 So. 3d 749, 758 (Miss. 2011), in which we affirmed a defendant's right to not be ambushed at trial with previously undisclosed calculations forming the basis for the plaintiff's expert opinions, *even when* the new disclosure did not alter the original expert conclusions. In *Hyundai*, we found reversible error in the plaintiff's failure to disclose (*via* formal supplementation) changes in the velocity calculations its experts used to form opinions on a car-crash impact. Even though the expert's ultimate conclusions remained the same, we found that the defendants had been ambushed

in preparation of their defense, which relied on the initial velocity disclosures as the basis for preparing the defense.

¶22. Generally speaking, the annually published RS Means Construction Cost manual is a reliable industry source of data and has been used with approval in cases involving expert testimony on damages. *See Traco Steel Erectors, Inc. v. Comtrol, Inc.*, 222 P.3d 1164 (Utah 2009); *Hale v. Big H Constr., Inc.*, 288 P.3d 1046 (Utah Ct. App. 2012). But merely disclosing that a five-year-old RS Means manual is the general basis for the conclusory estimates on twenty-two of twenty-three items of alleged structural damages amounting to several million dollars does not provide a sufficient disclosure of data for a trier of fact to determine that the estimates have been calculated with reasonable accuracy or for a defendant to meet the evidence.[5] As it is, the testimony is unreliable because it fails to disclose the basis of the expert opinion.

¶23. We reiterate that the timing and outcome of *Daubert* considerations are squarely within the discretion of the trial court. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Edmonds v. State*, 955 So. 2d 787, 792 (Miss. 2007). Pretrial obfuscation of the basis for expert opinions, especially when the court has ordered further disclosure, is a game of chicken that parties should not play in light of how our evidentiary standards have evolved to preclude trial by ambush. We note that the court excluded Hayes's testimony only after continuing trial to give him the (mandatory)

---

[5] We note that portions of the calculations provided for Item Three do include some aspects of calculation that could be extrapolated to the other items and create fodder for cross-examination and opposing expert testimony, such as sales tax and permitting costs.

13

opportunity to supplement his expert report with a specific basis for each of his opinions relating to cost.

¶24. After carefully examining the transcript of the hearing and the court's written order for supplementation, we agree with the trial court and the defendants that production of the basis for only one itemized opinion out of twenty-three was not in compliance with the degree of specificity reasonably ordered by the trial court. "The failure seasonably to supplement or amend a response is a discovery violation that may warrant sanctions, including the exclusion of evidence." *Hyundai Motor Am. v. Applewhite*, 53 So. 3d at 758; *Ekornes-Duncan v. Rankin Med. Cir.*, 808 So. 2d 955, 958 (Miss. 2002). We find that the trial court did not abuse its discretion in excluding Hayes's testimony, particularly in light of the fact that the trial court continued the trial and granted additional time for supplementation.

¶25. IBTS argues that the trial court also abused its discretion in finding that Avegno was unqualified to provide expert testimony relating to damages, and in refusing to permit supplementation of Avegno's opinions relating to costs. IBTS argues that Avegno's statements in his initial report should be taken in the context of his replacement of Bailey, that his experience and qualifications outlined in his curriculum vitae (which is part of the record) counter his initial cautious declamation of his qualifications to provide cost estimates, and that the trial court abused its discretion in failing to permit Avegno to supplement his initial report with specific basis for his cost estimates.

14

¶26. An expert is qualified "only if the witness possesses scientific, technical, or specialized knowledge on [the] particular topic" of his opinion. *Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 992 (Miss. 2012) (quoting *Worthy v. McNair*, 37 So. 3d 609, 616 (Miss. 2010)). We agree with IBTS that "a witness need not be a specialist in any particular profession to testify as an expert. The scope of the witness's knowledge and experience, and not any artificial classification, governs the question of admissibility." *R. McNight & Son v. C. & I Entm't*, 100 So. 3d 1022 (Miss. Ct. App. 2012) (quoting *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 146 (Miss. 2007). But Avegno explicitly stated in his expert report that the range of between "$1,660,000 and $4,020,000" was merely his general estimate and that establishing sufficiently specific estimates would require bringing in someone more qualified.

¶27. We cannot ignore Avegno's statements and rely on the general assertion that Avegno's background and experience do indeed indicate his qualifications to provide cost estimates if only given an opportunity to supplement. We find that the trial court did not abuse its discretion in granting the defendants' *Daubert* motion to exclude Avegno as unqualified to provide expert opinions relating to cost.[6]

**CONCLUSION**

---

[6] IBTS has presented a much stronger argument that the trial court abused its discretion in refusing to permit the seasonable supplementation of Avegno's expert report regarding deficiencies of the foundation piles of the condominiums. However, we do not address this argument, given our affirmation of summary judgment due to lack of admissible evidence of damages.

¶28. We affirm the trial court's grant of summary judgment on the grounds that the plaintiff failed to present admissible expert opinions on damages. Hayes's cost damages opinions lacked sufficient disclosure of the method and calculations that formed the basis of his report. Avegno was, by his own admission, not qualified to provide cost estimates relating to his other opinions on structural defects. Because we affirm summary judgment on these grounds, we do not find it necessary to address the other issues raised on appeal.

¶29. **AFFIRMED**.

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**