ROBERTS, J.,
for the Court:
¶ 1. On November 21, 2007, Netra Cooper Cattenhead filed a suit alleging medical malpractice against Dr. Karen Houston; Jackson Radiology Associates, PA; Jackson HMA Inc. d/b/a Central Mississippi Medical Center; Dr. Terry Brantley; John Doe Persons A-M; and John Doe Entities N-Z.[1] After granting Cattenhead several extensions of time to obtain counsel and an expert witness, the Hinds County Circuit Court granted Dr. Brantley’s motion for summary judgment on October 4, 2011. The circuit court dismissed Cat-tenhead’s case with prejudice. Cattenhead filed a motion to set aside the circuit court’s grant of summary judgment and dismissal of her case, which the circuit court denied on November 9, 2011. As a result, Cattenhead executed the current appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. Cattenhead, a nurse practitioner, visited the Central Mississippi Medical Center emergency room on April 6, 2000. Dr. Brantley was the emergency-room physician who evaluated Cattenhead. Cat-tenhead informed Dr. Brantley that she had felt a mass in her right breast. Dr. Brantley ordered an ultrasound of the mass. An ultrasound was performed on the same day, and Dr. Houston reviewed the ultrasound. According to Catten-head’s medical records, Dr. Houston noted that the mass was “most likely a fibroade-noma!,] but the ultrasound appearance of [the mass was] nonspecific.” The same record indicated that Cattenhead’s medical history from her visit to the emergency room that day included breast pain. Dr. Brantley received Dr. Houston’s notes and informed Cattenhead of the results. Neither Dr. Brantley nor Dr. Houston indicated whether Cattenhead should seek further assessment of the mass.
¶ 3. Cattenhead did not obtain any further tests on the mass until September 2005 when she noticed the mass growing larger. On October 5, 2005, further testing revealed that a mass in her right breast was an infiltrating lobular carcinoma. Cattenhead underwent a bilateral mastectomy with right[-]breast reconstruction, chemotherapy, and hormone therapy.
¶ 4. Cattenhead filed suit against Dr. Houston; Jackson Radiology Associates, PA; Jackson HMA Inc. d/b/a Central Mississippi Medical Center; Dr. Brantley; John Doe Persons A-M; and John Doe Entities N-Z on November 21, 2007. In her suit, she claimed that Dr. Brantley’s failure to diagnose the cancer and/or recommend additional testing resulted in injury and damage to her. She further claimed that there was a breach of warranty since it was implied that in exchange for payment, she would received adequate, safe, and proper care. No other defendant except Dr. Brantley was served with process. Dr. Brantley filed his answer on December 10, 2007, and thereafter filed a motion for summary judgment on July 31, 2008. In his motion for summary judgment, Dr. Brantley denied any wrongdoing *1139 or malpractice, and he stated that his motion for summary judgment should be granted because Cattenhead had not designated an expert witness to testify that Dr. Brantley deviated from the standard of care of an emergency-room physician. Additionally, Dr. Brantley claimed that Cattenhead presented no expert testimony that the mass biopsied in September 2005 was the same mass that was studied in April 2000.
¶ 5. On August 7, 2008, Cattenhead moved for additional time to respond to Dr. Brantley’s motion for summary judgment. The circuit court granted the motion, and Cattenhead had until September 1, 2008, to respond to Dr. Brantley’s motion for summary judgment. Cattenhead filed a second motion for additional time on September 2, 2008. She then filed a designation of an expert witness naming Dr. Songhai Barclift, who practices obstetrics and gynecology, as her expert. Catten-head alleged that Dr. Barclift would testify as to Dr. Brantley’s breach of the standard of care.
¶ 6. Then, on February 18, 2010, Catten-head’s attorneys filed a motion to withdraw as counsel; the circuit court granted the motion and gave her sixty days from March 11, 2010, to obtain new counsel or proceed pro se. On May 5, 2010, just five days shy of the deadline, J. Ashley Ogden, an attorney, filed a special entry of appearance and a request for additional time to review Cattenhead’s case. The circuit court granted Cattenhead an additional forty-five days. On November 17, 2010, Cattenhead indicated her intention to proceed pro se.
¶ 7. A hearing on Dr. Brantley’s motion for summary judgement was held before the circuit court on June 10, 2011, with Cattenhead proceeding pro se and relying on Dr. Barclift’s affidavit as sufficient for proof of the standard of care. Dr. Brant-ley presented an affidavit from Dr. Tate Thigpen, chief of the University of Mississippi Medical Center’s Division of Oncology. Dr. Thigpen opined that it could not be said to a reasonable degree of medical certainty that the initial ultrasound revealed any cancerous growth, but, for argument’s sake, assuming that it was a cancerous growth back at the time of her emergency room visit, there would have been no change in her treatment. The circuit court informed Cattenhead that Dr. Barclift’s affidavit was insufficient and, on June 20, 2011, the circuit court filed an order granting Cattenhead an additional forty-five days to find a qualified expert witness to testify as to the standard of care of an emergency-room physician since Dr. Barclift did not possess any familiarity with this standard of care. New counsel for Cattenhead filed entry of appearance on July 26, 2011, and requested additional time to obtain an expert opinion as the standard of care of an emergency-room physician.
¶ 8. No order granting or denying Cat-tenhead’s latest motion for additional time was ever entered; however, some three months later, and with no new expert affidavit having been filed by Cattenhead, the circuit court entered an order on October 5, 2011, granting Dr. Brantley’s motion for summary judgment and dismissing the case with prejudice. Cattenhead filed a motion to set aside the October 5 order and dismissal of the case. In her motion, Cattenhead for the first time argued that the standard of care should not be that of an emergency-room physician since she was not seeing Dr. Brantley in an emergency-room situation. Cattenhead attached a letter from Dr. Fred Mushkat, an emergency-room physician, stating: “Given the information I have, I am making the assumption that [Cattenhead] contacted an [e]mergency [p]hysician whom she *1140 somehow knew, and that physician ordered the mammogram. Under these circumstances, if my assumption is correct, this physician was not practicing Emergency Medicine at that time.” Dr. Mushkat further stated that Dr. Brantley had the duty to inform Cattenhead that the test showed a possible fibroadenoma, but that the findings were nonspecific and that she should follow up with a surgeon. The letter was not an affidavit. The circuit court denied Cattenhead’s motion on November 9, 2011.
¶ 9. Cattenhead timely filed her notice of appeal on December 6, 2011. On appeal, she raises the following issue: “Whether the [circuit] court abused ... its discretion when it disqualified [Cattenhead’s] expert Dr. Barclift and granted summary judgment to appellee and erred in concluding [Cattenhead] was being treated emergently.” We find no error, and we affirm the circuit court’s grant of summary judgment in favor of Dr. Brantley.
ANALYSIS
¶ 10. When granting summary judgment, “[t]he trial court must review the evidence in the light most favorable to the nonmoving party. If there is any doubt regarding the existence of a genuine issue of material fact, the benefit goes to the nonmovant.” Ladnier v. Hester, 98 So.3d 1025, 1028 (¶ 9) (Miss.2012) (internal citation omitted). An appellate court applies a de novo standard of review to a trial court’s decision to grant or deny summary judgment. Id. at 1027-28 (¶ 9). However, this Court reviews a trial judge’s disqualification of an expert witness under the abuse-of-discretion standard. Hubbard v. Wansley, 954 So.2d 951, 956 (¶ 11) (Miss.2007) (citing Palmer v. Biloxi Reg'l Med. Ctr., 564 So.2d 1346, 1357 (Miss.1990)).
¶ 11. Cattenhead argues that the circuit court erred in granting summary judgment in favor of Dr. Brantley. According to Cattenhead, Dr. Brantley was not treating her in the context of an emergency-room physician; therefore, the standard of care should actually be that of a general physician. Cattenhead relies on a letter from Dr. Mushkat to support her contention that Dr. Brantley did not act as an emergency-room physician at the time of her examination and that even if the standard was that of an emergency-room physician, Dr. Brantley deviated from that standard of care. Cattenhead further asserts that Dr. Barclift’s affidavit was sufficient to show that Dr. Brantley did not meet the standard of care. Lastly, Cat-tenhead claims that the circuit court improperly disqualified Dr. Barclift as an expert since it is not required that a physician be in a particular field to render a medical opinion in that field.
¶ 12. We first address Catten-head’s assertion that Dr. Brantley was not acting in the capacity of an emergency-room physician at the time he examined her. A review of the record indicates that this particular argument was raised for the first time after the motion for summary judgment was granted. “[A] motion to set aside or reconsider an order granting summary judgment will be treated as a motion under [Mississippi Rule of Civil Procedure] Rule 59(e).” Brooks v. Roberts, 882 So.2d 229, 233 (¶ 15) (Miss.2004) (citation omitted). “[T]he movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice.” Id. (citation omitted). We cannot find where Cattenhead’s argument that Dr. Brantley was not acting as an emergency-room physician satisfies any of the above enumerated situations. We also note that the expert opinion relied on for this argument is in the form of a written *1141 letter and not an affidavit. Therefore, the letter alone does not satisfy the requirement that Cattenhead provide an affidavit of an expert witness on Dr. Brantley’s standard of care.
¶ 13. Thus, our primary analysis of this case requires us to determine whether Dr. Barclift’s affidavit was sufficient to survive a summary-judgment challenge. Based upon our standard of review, we find that the circuit court did not abuse its discretion in disqualifying Dr. Barclift as an expert witness. In a claim for medical malpractice, “expert testimony must be used.” Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992). Further, “[n]ot only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Id. (citation omitted). To show that Dr. Brantley breached the standard of care, Cattenhead submitted the affidavit of Dr. Barclift. In the affidavit, Dr. Barclift, a board-certified physician practicing in gynecology and obstetrics, opined that she was qualified “to comment on the standards of care of reasonable professional practice in the aspects of [Cattenhead’s] treatment.” Dr. Barclift also provided her opinion as to the departures from the standard of care by Dr. Brantley and Dr. Houston; however, at no point in her affidavit does Dr. Barclift state what specialty she based her findings that Dr. Brantley deviated from the appropriate standard of care. More specifically, she does not state that she is familiar with the specialty of emergent care, which is Dr. Brantley’s specialty. It is correct that a physician need not be in a particular specialty to offer an expert opinion, but it is required that the physician show a satisfactory familiarity with the specialty of the appellee doctor. Paige v. Miss. Baptist Med. Ctr., 31 So.3d 637, 642 (¶ 22) (Miss.Ct.App.2009) (citing Hubbard, 954 So.2d at 957 (¶ 13)). Dr. Brantley’s specialty is that of emergent care, and excluding Cat-tenhead’s argument that Dr. Brantley was not working as an emergency-room physician at the time, it is clear that Dr. Barclift had no experience or familiarity with the standard of care of an emergency-room physician. While there is little doubt that Dr. Barclift was qualified as an expert of women’s health issues, we do not find that she was satisfactorily familiar with the standard of care of Dr. Brantley’s field of emergent care. As such, the circuit court did not abuse its discretion in disqualifying Dr. Barclift as an expert witness.
¶ 14. Therefore, without an expert witness, Cattenhead’s case cannot survive a motion for summary judgment, and the circuit court properly granted Dr. Brant-ley’s motion for summary judgment.
¶ 15. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., AND JAMES, J„ NOT PARTICIPATING.

. Dr. Brantley was the only defendant served with process and is the only defendant in the present appeal.