# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01660-SCT

*CLEVELAND NURSING AND REHABILITATION, LLC*

*v.*

*ESTATE OF ANNIE MAE GULLY, BY AND THROUGH THE ADMINISTRATRIX, EVA BELLMON*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/2013 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE CLANTON GUNN, IV |
| | BRADLEY WITHERSPOON SMITH |
| | ANDREA LA'VERNE FORD EDNEY |
| ATTORNEYS FOR APPELLEE: | LEVI BOONE, III |
| | KELVIN CEDELL PULLEY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED IN PART AND REMANDED. |
| | ON CROSS-APPEAL: AFFIRMED - 10/20/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Cleveland Nursing and Rehabilitation Center, LLC, ("Cleveland") filed a motion for new trial alleging, *inter alia*, that the jury, which awarded the Estate of Annie Mae Gully (hereinafter "Bellmon") $1,000,000, had been allowed to hear undisclosed opinions from an

expert and improper closing argument from counsel for the estate. Because the trial court committed reversible error, we reverse the judgment and remand this case for a new trial.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     While a resident at Cleveland, Annie Mae Gully fell and broke her hip. Following complications from a surgical procedure to repair her hip, Gully died six days later. Subsequently, suit was filed against Cleveland, alleging claims of negligence and gross negligence.

¶3.     In the Supplemental Designation of Experts, Bellmon designated Karon Goldsmith, RN, LNC, NHA, RMC, as an expert in the field of nursing and nursing home administration, and Wayne Dotson, M.D., Gully's treating physician. Dr. Dotson's designation was that Gully's fall on December 22, 2008, was causally related to her left hip fracture. Goldsmith's designation opined that the following acts and omissions were breaches of the standard of care:

> (a) Failure to assess the condition of ANNIE MAE GULLEY [sic];
>
> (b) Failure to properly monitor the condition of ANNIE MAE GULLEY [sic];
>
> (c) Failure to develop an adequate or appropriate care plan, relating to the condition of ANNIE MAE GULLEY [sic], deceased;
>
> (d) Failure to implement an appropriate care plan relating to ANNIE MAE GULLEY [sic];
>
> (e) Failure to prevent ANNIE MAE GULLEY [sic] from falling;
>
> (f) Failure to properly evaluate ANNIE MAE GULLEY [sic] so as to provide appropriate care regarding safety while ambulating;

(g) Failure to provide sufficient numbers of personnel, including nurses, nurse assistant, medication aides, orderlies, to meet the total needs of ANNIE MAE GULLEY [sic] [in] conjunction with the needs of other residents of the nursing home, depending on the proof of staffing at the relevant times;

(h) Failure to provide and assure an adequate nursing care plan based on the needs of ANNIE MAE GULLEY [sic] at the time of her admission to the nursing home and upon her changing conditions;

(i) Failure to provide and assure adequate nursing care plan revisions and modification as the needs of ANNIE MAE GULLEY [sic] changed;

(j) Failure to implement and follow an adequate nursing care plan for ANNIE MAE GULLEY [sic];

(k) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in patient care at the nursing home;

(l) Failure to seek appropriate physician's orders as the needs of ANNIE MAE GULLEY changed.

¶4.   Cleveland countered with  Dr. William Marcus Meeks and Gaye Ragland, RNC, MSN, both experts in nursing-home standard of care, who were expected to testify as to Gully's alleged injuries and the cause and/or contributing factors of those alleged injuries. Dr. Meeks also was expected to testify that neither Cleveland nor its staff "caused or contributed to the injuries and medical conditions allegedly suffered by [Gully] as claimed by [Bellmon]." Dr. Meeks based his opinions on Gully's death certificate, *inter alia*.

¶5.   Bellmon filed a motion to inspect the premises of Cleveland to specifically inspect and photograph "the wheel chair, body alarm, and gait belt, and any other apparatus used regarding the ambulation of Annie Gully." In a supplemental motion to inspect, Bellmon requested permission also to "inspect and photograph the alternative security devices available to assist in ambulation of nursing home patients such as the lap buddy, seatbelt, soft

3

torso restraint, and soft waist restraint." Despite Cleveland's objection that because nearly five years had passed since Gully had been a resident of Cleveland, Cleveland did not have the same equipment available for use by Gully, the motion was granted.

¶6.     At the hearing on Bellmon's motions to inspect, the trial court noted that this matter had been pending for three years and made it clear that experts would not be allowed to testify beyond the opinions set forth in discovery, stating "they will not be giving any other opinions that are not listed in that discovery. Zero. So you should know all the opinions that they're going to be giving. Because I won't permit any other opinions to be given." After conferring to resolve discovery disputes, the parties agreed that they would not take any depositions of expert witnesses, discovery need not be extended, and interrogatory responses and designations would be supplemented to preserve their September 2013 trial date.

¶7.     Subsequently, Bellmon moved to exclude Cleveland's experts pursuant to **Daubert**,[1] arguing that Cleveland's unsupplemented disclosures could not meet the **Daubert** test. Cleveland averred that, because Bellmon did not supplement her interrogatory responses or expert designations and the trial court ruled it could supplement only if Bellmon did, Cleveland also did not supplement. The trial court held that all objections to Cleveland's experts were waived pursuant to the prior agreement between the parties.

¶8.     Then, Cleveland moved to exclude testimony regarding injuries from Gully's two previous falls. Prior to her December 22, 2008 fall, Gully slid out of a chair in February 2008 and then, on December 19, 2008, three days before the fall at issue in this case, tripped while

---

[1] **Daubert v. Merrell Dow Pharms., Inc.**, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

4

pushing a food cart. Cleveland argued that there were no documented injuries of those two falls and that no expert had provided any opinions that Gully suffered injuries from those falls. The trial court ruled that no evidence could be presented that the two prior falls breached the standard of care. The trial court agreed that Bellmon would not be allowed to argue a separate claim of damages or breach of care related to those falls but could elicit testimony regarding the falls in the context of notice. Cleveland now argues that, during closing arguments, counsel for Bellmon ran afoul of this ruling by arguing that the December 19, 2008, fall resulted from a breach of the standard of care. Cleveland objected to the argument, but the trial court overruled the objection because counsel for Bellmon claimed he was arguing "lack of monitoring."

¶9.     Cleveland also argued that Bellmon's expert disclosures did not sufficiently put Cleveland on notice that Goldsmith would provide an expert opinion on restraints. The trial court reserved its ruling on Cleveland's motion, stating that, "But I can tell you, I have grave concerns about allowing an expert to give an opinion that she should have been restrained in a wheelchair *when there's no mention of restraint in her discovery responses*." However, the next day, the trial court questioned Cleveland as to whether it could claim "surprise" to Goldsmith's opinion on restraints since Bellmon had filed a motion to inspect equipment at Cleveland. Cleveland argued that the proper test was whether the expert had disclosed the opinion, not surprise, and in this case, Cleveland argued that there was nothing in Goldsmith's disclosures pertaining to restraints. The trial court denied Cleveland's motion based on Bellmon having moved to inspect the facility.

¶10. At the close of evidence, the jury returned a verdict in favor of Bellmon, awarding $1 million in noneconomic damages. Cleveland moved to have the jury's verdict reduced to $500,000 in accordance with Section 11-1-60 of the Mississippi Code. On November 5, 2013, the circuit clerk noted on the docket "Judgment sent to all parties." The judgment was filed-stamped on November 4, 2013, and reduced the award to $500,000. Cleveland filed a motion for new trial or, alternatively, for judgment notwithstanding the verdict (JNOV). The motion was filed-stamped November 18, 2013. Bellmon moved to strike the motion as untimely.

¶11. At a hearing on the timeliness of the motion, Cleveland submitted an affidavit from an employee with its counsel's law firm, attesting that the employee attempted numerous times to ascertain from the clerk whether judgment had been entered. Pursuant to the affidavit, counsel was informed by the clerk's office as late as November 6, 2013, that no judgment had been entered. Cleveland argued that it received a copy of the judgment on November 14, 2013. Believing November 14, 2013, to be the deadline for filing a motion, Cleveland emailed a copy of the motion to the staff attorney for the trial judge. The email made no reference to the urgency of the matter. Cleveland overnighted the original motion to the clerk; however, the clerk did not receive the motion until November 18, 2013.

¶12. Cleveland argued that the motion was timely filed because (1) the motion was delivered to the trial judge on November 14, 2013, pursuant to Rule 5(e)(1) of the Mississippi Rules of Civil Procedure, (2) the judgment of the court was not entered pursuant to Rule 79(a), and (3) the court had the authority to vacate the judgment pursuant to Rule

6

60(b)(6). The trial court held that the general docket did not contain a notation specifically evidencing the "entry" of the judgment by the court and therefore did not comply with the language of Rule 79(a). The trial court found that no judgment had been entered on the docket and that the time for filing the motion for new trial had not run. The trial court instructed the clerk to enter the judgment properly on the docket and to serve a copy on all counsel. Cleveland was instructed that it could file its motion for new trial pursuant to Rule 59 once the judgment was properly entered.

¶13.    On February 7, 2014, the judgment in favor of Bellmon was entered on the docket. Cleveland filed its motion for new trial, which was denied by the trial court. Cleveland timely filed this appeal, and Bellmon cross-appealed.

## STATEMENT OF THE ISSUES

¶14.    Cleveland alleges the following issues on appeal:

I.      Whether Cleveland is entitled to a new trial because the trial court admitted undisclosed testimony by Plaintiff's nurse expert.

II.     Whether Cleveland is entitled to a new trial because the trial court prohibited Cleveland's physician expert from offering disclosed opinions to rebut cause-of-death opinions from Plaintiff's physician expert.

III.    Whether Cleveland is entitled to a new trial because Plaintiff's counsel improperly argued that the jury could consider a prior fall -- which was not supported by expert testimony and excluded by the trial court -- as part of Plaintiff's lack of monitoring claim.[2]

---

[2] Because we find Cleveland's first issue dispositive, we do not address this issue. Nonetheless, the parties are cautioned on retrial to remain within the bounds of the trial court's rulings during closing arguments and at all other times.

IV.     Whether Cleveland is entitled to judgment notwithstanding the verdict on Plaintiff's claims because Plaintiff's breach and causation opinions were not supported by expert testimony.

On cross-appeal, Bellmon presents the following issues:

I.     Whether the trial court erred in finding that the clerk's November 5, 2013, docket entry that "JUDGMENT SENT TO ALL PARTIES" was not a proper entry of the final judgment filed on November 4, 2013.

II.     Whether the trial court erred in allowing Defendant to refile its Motion for New Trial.

III.     Whether the Defendant's Notice of Appeal [should] be dismissed as untimely.

IV.     Whether the trial court erred in granting Defendant's Motion to Reduce the Verdict from $1,000,000 to $500,000.

V.     Whether the trial court erred in granting summary judgment on Plaintiff's punitive damages before the jury had the opportunity to hear all the evidence and award compensatory damages.

VI.     Whether the trial court erred in granting Defendant's Motion for Order Staying Execution of Judgment.

**ANALYSIS**

¶15.   "When considering a trial court's denial of a motion for a new trial, this Court's standard of review is abuse of discretion." **Bailey Lumber & Supply Co. v. Robinson**, 98 So. 3d 986, 991 (Miss. 2012). We will first address Bellmon's cross-appeal regarding the issues of the timeliness of the motion for new trial.[3]

**I.    THE TRIAL COURT DID NOT ERR IN FINDING THAT THE CLERK'S NOVEMBER 5, 2013, DOCKET ENTRY DID NOT COMPLY WITH RULE 79(A) AND DID NOT ERR IN ALLOWING CLEVELAND TO FILE ITS**

_____

[3] We will address Cleveland's first three issues raised in its cross-appeal collectively.

**MOTION FOR NEW TRIAL AFTER THE JUDGMENT WAS PROPERLY ENTERED.**

¶16. Rule 79 of the Mississippi Rules of Civil Procedure governs entries by the circuit clerk in the general docket. *See* ***In re Dunn***, 82 So. 3d 589, 591 (Miss. 2012). The rule requires that:

> All papers filed with the clerk . . . and judgments shall be noted in this general docket on the page assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court. . . . The entry of an order or judgment shall show the date the entry is made.

Miss. R. Civ. P. 79(a). Moreover, "[a] judgment shall be effective only when entered as provided in M.R.C.P. 79(a)." Miss. R. Civ. P. 58.

¶17. The November 5, 2013, general docket entry reads "JUDGMENT SENT TO ALL PARTIES." No prior entry on the docket references any judgment being entered by the court, and the November 5, 2013, entry fails to contain the substance of the judgment of the court. Because the docket entry did not comply with Rule 79(a), the trial court did not abuse its discretion in finding that no judgment had been properly entered. Also, the trial court did not abuse its discretion in allowing Cleveland to file its motion for new trial after the entry of judgment was properly recorded on the docket. As such, Cleveland's notice of appeal was timely. We will now address the first two issues raised in Bellmon's appeal.

**II. THE TRIAL COURT ERRED IN ALLOWING GOLDSMITH TO TESTIFY REGARDING UNDISCLOSED RESTRAINT OPINIONS.**

¶18. Although the trial court found no mention of restraints in Goldsmith's discovery responses, the trial court allowed Goldsmith to testify as to restraints, finding that Cleveland

had suffered no surprise due to the motion to inspect equipment filed by Bellmon. This ruling is contrary to this Court's precedent.

¶19.  In *Hyundai Motor America v. Applewhite*, 53 So. 3d 749 (Miss. 2011), Hyundai argued that it was entitled to a new trial because "it was ambushed by changes to Webb's opinion." *Hyundai*, 53 So. 3d at 757. Hyundai deposed Webb, who gave a detailed explanation of his calculations. *Id.* However, two months after the deposition, Webb signed an errata sheet changing four variables that he had used to make his calculations. *Id.* Despite these changes, Webb's ultimate conclusions were not changed. *Id.* at 758. Hyundai moved to strike Webb's testimony, arguing that it never had received the errata sheet and that it was surprised by the changes in Webb's testimony. *Id.* After hearing extensive arguments on the issue, the trial court denied Hyundai's motion. *Id.*

¶20.  In *Hyundai* we held that whether Hyundai had notice of the changes per the errata sheet was "unnecessary and irrelevant" because "simply giving the defendant this document did not relieve the plaintiffs of their duties under Mississippi Rule of Civil Procedure 26(f)." *Id.* "If a witness changes his testimony in a manner that conflicts with prior discovery responses, the sponsoring party has a duty under Rule 26(f) seasonably and formally to amend or supplement the response." *Id.* (citing *Choctaw Maid Farms, Inc. v. Hailey*, 822 So. 2d 911, 916 (Miss. 2002)). Rule 26(f) reads in pertinent part that:

> (1) A party is under a duty seasonably to supplement that party's response with respect to any question directly addressed to . . . . (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony.

(2) A party is under a duty seasonably to amend a prior response if that party obtains information upon the basis of which (A) the party knows that the response was incorrect when made, or (B) the party knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

Miss. R. Civ. P. 26.

¶21. During the July 2, 2013, hearing, the trial court reminded both parties that experts would not be allowed to testify as to any opinion not provided in discovery responses. The parties conferred and agreed to supplement discovery; however, neither party took advantage of the opportunity. Goldsmith's disclosures address a multitude of claimed breaches; however, the disclosures did not mention the lack or misuse of restraints as a proximate cause of her injury and/or death.

¶22. Despite Bellmon's failure to comply with Rule 26(f), the trial court denied Cleveland relief and allowed Goldsmith to testify about restraints. We find that the trial judge abused his discretion in ruling that Bellmon's motion to inspect the premises somehow cured Bellmon's failure to supplement Goldsmith's opinions. Cleveland was entitled to full and complete disclosure of Goldsmith's expert testimony, and Bellmon's motion to inspect the premises was not a proper alternative or valid substitution for supplementing answers to interrogatories. Accordingly, this issue warrants reversal and a remand for a new trial.

III. **THE TRIAL COURT DID NOT ERR IN PROHIBITING DR. MEEKS FROM TESTIFYING AS TO HIS OPINION OF THE CAUSE OF DEATH OF GULLY.**

¶23. Dr. Meeks disclosed that he would offer testimony as to the cause of Gully's injuries. He also disclosed that, in addition to Gully's medical records, he reviewed her death

11

certificate before formulating his opinions. After Dr. Meeks testified that he had reviewed Gully's death certificate, counsel for Cleveland attempted to show Dr. Meeks the death certificate. Counsel for Bellmon requested a bench conference, and the following exchange took place:

BY THE COURT: . . . What do you want to ask him about it?

BY MR. SMITH: Ask him his opinion on her cause of death; the same thing he asked Dr. Brock.

BY MR. BOONE: That is not in his opinion, Your Honor.

. . .

BY THE COURT: One, two, three or four? Four. "Cause and/or contributing factor to alleged injuries that are the subject of this litigation." So I guess the question is does death come under the auspices of injuries.

BY MR. SMITH: Injuries and damages are her death. The treating physician gave that opinion and expert disclosure is not a formal designation of the treating physician on the cause of death opinion. In fact I didn't know he was going to do it. So he's elicited that opinion from a doctor. He's looked at the death certificate –

BY THE COURT: -- Well, if it wasn't in the designation you could have objected to it. . . . You chose not to. . . . Mr. Boone has elected to object. . . . You know he could have said "cause of death" in here as opposed to "injuries."

BY MR. SMITH: Would it make any difference if I tell you what his opinion is?

BY THE COURT: Okay, what is his opinion?

BY MR. SMITH: His opinion is, from looking at all the records, he does not have enough information to get to a reasonable degree of medical certainty. . . . His opinion will be that

12

he does not have enough information because there was not an and [sic] a lack of other medical information to give a cause of death opinion for Ms. Gully to a reasonable degree of medical certainty.

BY THE COURT: So his opinion is he doesn't have one.

. . .

BY MR. SMITH: He didn't have one because the medical records won't support one.

BY MR. BOONE: It's still a back way to get in -- that's a back attack.

BY THE COURT: Yeah, I agree. I don't think it is disclosed. Not disclosed, not giving it.

¶24. Similar to Goldsmith's lack of full disclosures, Dr. Meeks did not fully disclose his opinion as to Gully's cause of death in his designations. Therefore, the trial court properly excluded Dr. Meeks's testimony.

¶25. Because we reverse the judgment of the circuit court and remand this case for a new trial, it is unnecessary to address the remaining issues raised by the parties.

**CONCLUSION**

¶26. We find that the trial court did not err (1) in finding that a judgment was not properly entered on the general court docket, (2) in allowing Cleveland to refile its motion for new trial, or (3) in limiting Dr. Meeks's testimony as to the cause of death of Annie Mae Gully. However, the trial court did commit reversible error in allowing Goldsmith to offer previously undisclosed opinions related to restraints. We reverse the judgment and remand this case for a new trial consistent with this opinion.

13

¶27. **ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED IN PART AND REMANDED. ON CROSS-APPEAL: AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**