# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00193-COA

**GREENWOOD LEFLORE HOSPITAL**                                    **APPELLANT**

**v.**

**MARK ANTHONY BENNETT AS THE**                                    **APPELLEE**
**ADMINISTRATOR OF THE ESTATE OF**
**JACQUELINE DEAL, DECEASED**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/2015 |
| TRIAL JUDGE: | HON. MARGARET CAREY-MCCRAY |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES LAWRENCE WILSON IV |
| | TOMMIE G. WILLIAMS |
| ATTORNEYS FOR APPELLEE: | TIMOTHY W. PORTER |
| | JOHN TIMOTHY GIVENS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 05/22/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Jacqueline Deal[1] filed this medical-negligence action against Greenwood Leflore

Hospital (GLH) for personal injuries she sustained when a 4x4-inch piece of gauze was

found in a wound in her left thigh. She was awarded damages after a bench trial. The judge

denied GLH's motion for involuntary dismissal and later denied its motion to alter or amend

the judgment or, in the alternative, motion for a new trial. On appeal, GLH argues that the

---

[1] Deal died on October 17, 2016, and Mark Anthony Bennett was substituted as a
party to this case by court order on December 16, 2016.

trial court erred in admitting testimony from Deal's expert and in denying GLH's motion for involuntary dismissal. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. On November 7, 2007, Deal sustained a serious injury to her left thigh when she was dragged by her car down the side of the road. Over the next three months, Deal was treated by various hospitals, including GLH, where a surgery to partially close the wound was performed on January 18, 2008.[2] After Deal was discharged from GLH on February 14, 2008, she received outpatient wound care, which included wet-to-dry dressing changes using gauzes, performed mostly by GLH's Wound Care/Hyperbaric Center.

¶3. In March 2008, Deal was evaluated for a possible skin-grafting procedure at GLH by Dr. John Payne. Her wound at that time was almost completely healed except for a deep penetrating wound to the left-groin area, which had developed purulent drainage. Dr. Payne determined that he was unable to perform the skin graft, rather referring Deal to the wound-care clinic for a wound VAC[3] and antibiotics. In between trips to the wound-care center, Deal continued to have her dressings changed at her home by Continue Care Home Health and her sister.[4]

---

[2] The surgery consisted of partially closing the wound with stitches, except for two drain tubes (located in deep stab wounds) the surgeon made to accommodate the drain.

[3] Wound VAC, also known as vacuum-assisted closure, is a type of therapy used to help the wound heal more quickly. During treatment, a device is placed over the wound with a tight seal that decreases air pressure on the wound and helps promote healing of the wound and reduce the chance of infection.

[4] Deal was unable to change all of her dressings by herself.

2

¶4.     On her May 5, 2008 visit to the wound-care center, Deal's wound had almost completely healed except for a small opening near her groin that emitted purulent odor. By May 8, 2008, the drainage coming from the small opening had increased, and on June 11, 2008, the drainage became bloody; her pain increased. On July 1, 2008, the pain became significant, and Deal reported to the GLH emergency room, where she was treated and instructed to follow up with Dr. Payne.

¶5.     On July 15, 2008, Deal returned to the wound-care center where it was discovered that her wound had worsened with purulent yellowish, brownish, greenish drainage; a foul odor; and what appeared to be an abscess. She was admitted to GLH where an MRI was conducted. It revealed fluid collection consistent with a subcutaneous abscess. On July 18, 2008, a nurse performed a pulse lavage[5] in the wound, which resulted in the nurse seeing something in the wound, and, using tweezers, the nurse removed a 4x4-inch piece of gauze from the wound.

¶6.     Deal filed suit seeking damages from GLH on August 30, 2009, and on September 30, 2009, she amended her complaint. The amended complaint alleged that GLH breached the applicable medical standards of care in treating her wound and causing a delay in the healing process. On November 5, 2009, GLH answered and moved to dismiss the complaint for lack of pretrial notice. After a hearing on the matter, the trial court denied GLH's motion to dismiss, and discovery ensued. During discovery, Dr. Carrol McLeod was designated as Deal's expert, and on January 11, 2011, GLH deposed Dr. McLeod.

¶7.     The court held a bench trial from April 18–21, 2011. GLH objected to Dr. McLeod

---

[5] A pulse-lavage procedure is where pressurized, pulsed saline fluid is squirted into the wound and then vacuumed out.

3

testifying as to the standard of care of a wound-care professional. The judge considered the objection, allowed Dr. McLeod to testify as an expert in pain management and anesthesiology, and permitted Dr. McLeod to "give opinions about the effect of having a foreign body in a wound." After cross-examination, GLH moved to exclude Dr. McLeod's testimony based upon Deal's failure to timely supplement Dr. McLeod's opinions and Dr. McLeod's lack of qualifications. The judge denied GLH's motion.

¶8.     At the close of Deal's proof, GLH moved for involuntary dismissal pursuant to Mississippi Rule of Civil Procedure 41, arguing that Deal had not articulated an objective standard of care for any medical professional in any specialty or field of practice. Further, GLH re-urged its motion to strike Dr. McLeod's testimony for failure to supplement the disclosures of his trial court opinions. The trial court denied GLH's motions.

¶9.     On September 8, 2015, the trial court issued its "Findings of Fact and Conclusions of Law," finding that Deal's wound was delayed in healing because of the 4x4-inch piece of gauze left in her wound between January and February while at GLH. Further, the court found that due to GLH's negligence, Deal was unable to obtain a teaching contract for the 2008–09 school year. Therefore, the trial court awarded Jacqueline $185,000 in compensatory damages. Unhappy with the trial court's decision, GLH moved to alter or amend the judgment pursuant to Mississippi Rule of Civil Procedure 59. Alternatively, GLH requested a new trial. The trial court denied GLH's post-trial motion. Aggrieved, GLH appeals.

**STANDARD OF REVIEW**

4

¶10. "In reviewing the decision of a trial judge sitting without a jury, this Court may only reverse when the findings of the trial judge are manifestly wrong or clearly erroneous." *Sacks v. Necaise*, 991 So. 2d 615, 619 (¶6) (Miss. Ct. App. 2007) (citing *Singley v. Smith*, 844 So. 2d 448, 451 (¶9) (Miss. 2003)). When sitting without a jury, a trial judge's findings are reviewed with the same deference as a chancellor—his or her findings will not be overturned if supported by substantial, credible, and reasonable evidence. *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 20 (¶21) (Miss. Ct. App. 2012). "Additionally, when sitting as the finder of fact, the trial judge has the sole authority for determining the credibility of witnesses." *Sacks*, 991 So. 2d at 619 (¶6). However, this Court reviews errors of law de novo. *City of Jackson v. Perry*, 764 So. 2d 373, 376 (¶9) (Miss. 2000).

## DISCUSSION

¶11. On appeal, GLH asserts that the trial court erred in (1) allowing Dr. McLeod to testify as an expert and (2) not granting its motion for involuntary dismissal. However, both of GLH's assignments of error are premised on the issue of treatment and care of an open wound. The record indicates that the judge recognized that Dr. McLeod was qualified to testify about whether a foreign object left within the body caused infection and a delay in healing.

### I. Whether the trial court abused its discretion in allowing Dr. McLeod to testify as an expert.

¶12. GLH argues that the trial court erred in allowing Dr. McLeod to testify as an expert because (1) he was not qualified to testify about wound-care procedures or a standard of care for any wound-care professionals and (2) Deal's failure to supplement Dr. McLeod's

5

disclosures in accordance with Mississippi Rule of Civil Procedure 26(f) resulted in a trial by ambush. We conclude the trial court did not err in finding that Dr. McLeod was qualified to testify about foreign objects left in a wound and that his trial testimony did not constitute trial by ambush.

### A. Whether Dr. McLeod was qualified to testify as an expert.

¶13. GLH argues that the trial court abused its discretion by allowing Dr. McLeod to testify as an expert because he was unqualified to testify as to the standard of care for wound-care professionals or wound-care procedures. GLH asserts that Dr. McLeod was designated as an expert in the specialties of anesthesiology and pain management, neither of which were relevant to Deal's treatment. Therefore, GLH asserts that Dr. McLeod could not testify about wound-care issues because he was unfamiliar with the specialty of wound care. The trial court found that Dr. McLeod was qualified to testify as an expert in pain management, anesthesiology, and "general issues of wound care and the effects of having a foreign body in a wound."

¶14. In Mississippi, the admissibility of expert testimony is governed by Mississippi Rule of Evidence 702, which requires a witness to be "qualified as an expert by knowledge, skill, experience, training, or education." Further, Rule 702 requires that expert testimony be reliable, based on sufficient facts, the product of reliable principles and methods, and the result of a reliable application of the principles to the facts of the case. This requires the trial judge to act as a gatekeeper, ensuring that expert testimony is both relevant and reliable. *Patterson v. Tibbs*, 60 So. 3d 742, 749 (¶22) (Miss. 2011). In her role as gatekeeper, the trial

judge "must be certain that the expert exercises the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 37-38 (¶15) (Miss. 2003). Further, the admission or exclusion of expert testimony falls within the sound discretion of the trial court and will only be reversed if the decision was arbitrary or clearly erroneous. *Puckett v. State*, 737 So. 2d 322, 342 (¶57) (Miss. 1999). Moreover, this standard remains the same when a trial judge serves as the finder of fact. *Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1201 (¶15) (Miss. 2012) (applying the abuse-of-discretion standard to a bench trial).

¶15. It is undisputed that Dr. McLeod has been a practicing physician for over twenty years, as both an anesthesiologist and a pain-management specialist. While Dr. McLeod admitted he was not a specialist in wound care or general surgery, the trial judge found that this admission did not preclude him from testifying as to his knowledge of the effect of foreign bodies left in a wound. The record reveals that Dr. McLeod is a licensed physician who has had ample experience with open wounds and the infection that can occur when a foreign body is left in a wound. "A physician who is sufficiently familiar with the standards of a medical specialty[] may testify as an expert, even though he does not practice the specialty himself." *Sacks*, 991 So. 2d at 622 (¶23) (internal quotation mark omitted). During his career as a pain-management specialist, Dr. McLeod testified that he had, on numerous occasions, implanted spinal-cord stimulators that became infected, requiring him to remove the stimulators and treat the infection. Further, he testified that as an anesthesiologist he had seen numerous abscesses and was very familiar with "foreign bodies left in patients that

7

weren't intended to be left, such as retained sponges." Dr. McLeod was not called to testify as to day-to-day wound-care procedures or as to the standard of care of a wound-care professional. He was called to testify about general issues of wound care and the effect retained foreign bodies have on a wound. Therefore, we cannot find that the trial judge abused her discretion in allowing Dr. McLeod to testify.

> B. *Whether Dr. McLeod's testimony should have been stricken for failure to disclose his opinions.*

¶16. GLH argues that the trial court abused its discretion in not excluding Dr. McLeod's testimony because his opinions offered at trial were inconsistent with his pre-trial opinions, and there had been no proper supplementation prior to trial. Citing *Hyundai Motor America v. Applewhite*, 53 So. 3d 749 (Miss. 2011), GLH asserts that it prepared for trial based on Dr. McLeod's expert designation and deposition, but at trial his testimony was in such contrast that it took GLH by surprise and did not give it adequate notice to prepare a defense.

¶17. In Mississippi, seasonable supplementation of expert testimony is required by Rule 26(f). The purpose of this supplementation requirement is to fairly inform the opposing party of the evidence against it and give "an opportunity to meet it," avoiding trial by ambush. *Inn by the Sea Homeowner's Ass'n Inc. v. Seainn LLC*, 170 So. 3d 496, 503 (¶18) (Miss. 2015). Pursuant to Rule 26(f)(1)(B), a party is entitled to supplementation of "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony." Further, it is the duty of the parties to seasonably supplement their responses if either party becomes aware "that the response, though correct when made, is no longer true and the circumstances are such that

8

a failure to amend the response is in substance a knowing concealment." M.R.C.P. 26(f)(2)(B). Therefore, "[t]he failure seasonably to supplement or amend a response is a discovery violation that may warrant sanctions, including exclusion of evidence." *Hyundai*, 53 So. 3d at 758 (¶33) (citing *Ekornes-Duncan v. Rankin Med. Ctr.*, 808 So. 2d 955, 958 (¶10) (Miss. 2002)). However, "[r]ulings on discovery violations will not be overturned absent an abuse of discretion." *Id.*

¶18.    GLH cites to several lines of the transcript and asserts that Dr. McLeod's testimony was inconsistent and prejudicial. A review of the record indicates that GLH objected to Dr. McLeod offering testimony about what he would have expected a nurse to report upon finding an object in the wound because it was not included in his designation. Upon objection, Deal's counsel explained that as a practicing medical physician for over twenty years, Dr. McLeod could testify as to why a nurse would report something she finds in a wound. The judge, after hearing the objection and explanation offered by Deal's counsel, overruled GLH's objection.

¶19.    Next, GLH objected to Dr. McLeod's testimony that the gauze was left during the surgical procedure because the testimony was in contrast to his pre-trial designation and deposition. GLH stated that Dr. McLeod's expert designation explained that he would testify about the breach in the standard of care incurred because the retained sponge was left during wet-to-dry dressings.  Responding to the objection, Deal's counsel acknowledged that Dr. McLeod's designation stated that he would testify that the gauze was left during wet-to-dry dressings, but he also explained that Dr. McLeod's trial testimony—that the gauze was left

9

in the wound in January or February of 2008—remained consistent with his pre-trial designation. Deal's counsel further explained that she believed she did not have to give an exact instance when the gauze was left in the wound, but rather give testimony to a reasonable degree of medical certainty of when the gauze was inserted. After hearing both sides and reviewing *Hyundai*, the court excluded Dr. McLeod's testimony about the gauze's insertion specifically happening during surgery because "that was not provided as an opinion in discovery."

¶20.    After cross-examination, GLH moved to strike Dr. McLeod's testimony on the same grounds as its previous objections and because Dr. McLeod's trial testimony—that the wound healed distal to proximal—contradicted what was previously disclosed in his expert designation. GLH explained that Dr. McLeod's expert designation stated that Dr. McLeod would testify that the wound healed proximal to distal, with the last part of the wound to heal being the distal end. Further, GLH explained that during his deposition, Dr. McLeod testified that the wound healed distal to proximal. After hearing GLH's objection, the court allowed counsel for Deal to question Dr. McLeod about his inconsistent statement. Dr. McLeod explained that he had mistakenly used the words proximal and distal, but that "the overwhelming evidence . . . in this case is that this wound didn't heal because of this retained [gauze]." Further, Dr. McLeod explained that it did not really matter whether the gauze was left at the distal or proximal end because "[had the gauze] been at the distal end of the knee and not the proximal groin, the same scenario would have existed." The judge, after hearing these arguments, inquired about what the July 15 MRI showed and from which location the

10

gauze was removed. GLH's counsel, responding to both questions, explained that the MRI revealed an abscess in Deal's groin and that the gauze was removed from her groin area. The judge then denied GLH's motion to strike.

¶21.    As previously mentioned, a circuit court judge sitting as a fact-finder is granted the same deference as that of a chancellor, and the judge's findings will not be disturbed on appeal unless manifestly wrong or clearly erroneous, or an erroneous legal standard was applied. *Chantey Music Publ'g. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1055 (¶10) (Miss. 2005). The circuit judge, after hearing testimony and arguments from both parties, denied GLH's motion to strike. Under the greater latitude granted to circuit judges when sitting as a fact-finder, we cannot say this determination to allow Dr. McLeod's testimony was manifestly wrong or clearly erroneous.

## II.    Whether the trial court erred in denying the defendant's motion for involuntary dismissal.

¶22.    To begin our discussion of this issue, we first note that a trial court should deny a motion for involuntary dismissal "only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Amos ex rel. Amos v. Jackson Pub. Sch. Dist.*, 139 So. 3d 120, 123 (¶7) (Miss. Ct. App. 2014). Moreover, in reviewing the denial of a motion for involuntary dismissal, this Court applies a substantial evidence/manifest-error standard. *Id.*

¶23.    GLH asserts that the trial court erred in denying its motion for involuntary dismissal because Deal failed to show any right to relief as of the close of her case. Therefore, it asserts an involuntary dismissal was mandatory. Specifically it asserts that Dr. McLeod, Deal's sole

expert, failed to establish the necessary elements of a medical-negligence claim. Finding that Deal, through Dr. McLeod's testimony, established a right to recovery, the trial court's denial of GLH's motion for involuntary dismissal was supported by substantial evidence.

¶24.    To establish a right of recovery in a medical-negligence action, the plaintiff must prove:

> (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and[] (4) the plaintiff was injured as a result.

*McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 180 (¶12) (Miss. 2009). "The plaintiff must provide expert testimony articulating the requisite standard that was not complied with, and also establish that the failure was the proximate cause, or proximate contributing cause." *Univ. of Miss. Med. Ctr. v. Littleton*, 213 So. 3d 525, 535 (¶29) (Miss. Ct. App. 2016) (internal quotation marks omitted).

### A.    Whether Deal established the requisite standard of care.

¶25.    GLH argues that Deal failed to establish the applicable standard of care because Dr. McLeod could not establish who was responsible for leaving the gauze in Deal's wound. Therefore, it asserts that he could not identify the medical specialty, and the medical-negligence claim fails. *See Cattenhead v. Brantley*, 119 So. 3d 1136, 1141 (¶13) (Miss. Ct. App. 2013). While GLH correctly asserts that *Cattenhead* stands for the proposition that an expert witness is required to "show a satisfactory familiarity with the specialty of the appellee doctor," we find that *Cattenhead* is inapplicable to the case before us.

¶26.    In *Cattenhead*, a patient brought a medical-malpractice action against an emergency-room physician for failing to diagnose breast cancer or recommend additional testing. *Id.* at 1138 (¶4). Therefore, the central issue in that case was whether the emergency-room physician breached the applicable standard of care. *Id.* at 1141 (¶13). In affirming the trial court's grant of summary judgment, this Court agreed that a physician who practiced gynecology and obstetrics was not satisfactorily familiar with the specialty of emergency-room care and, therefore, her affidavit could not be used to survive summary judgment. *Id.*

¶27.    It is important to note that the present case does not concern physician malpractice, but rather the medical negligence of a hospital. Therefore, the central issue was whether the hospital, GLH, breached the applicable standard of care by leaving gauze inside Deal's wound. After extensive voir dire, the trial judge allowed Dr. McLeod to give opinions as to the effect of having a foreign object in the wound. He testified extensively about his prior experiences in treating wounds at various hospitals and explained that there is a duty to not leave gauze in someone's leg. Further, Dr. McLeod concluded that it was a breach in the standard of care to have left the gauze in Deal's wound in mid-January or early February 2008. "Often, an expert's discussion of the applicable standard of care is intertwined with his or her discussion of whether a breach occurred." *McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 579 (¶13) (Miss. 2011). Thus, Dr. McLeod did articulate an applicable standard of care.

    B.  *Whether GLH failed to conform to the applicable standard of care.*

¶28.    Next, GLH asserts that Dr. McLeod's testimony did not establish a breach in the

standard of care because he never articulated how anyone employed by GLH placed the gauze in the wound or how its actions violated any standard of care. GLH is correct that an "expert must articulate how [the] standard of care was breached." *Henson v. Grenada Lake Med. Ctr.*, 203 So. 3d 41, 45 (¶14) (Miss. Ct. App. 2016). However, a review of the record reveals that Dr. McLeod did testify how the standard of care was breached.

¶29.    At trial, Dr. McLeod articulated that it was a breach in the standard of care to have left the gauze in Deal's wound in mid-January or early February. He explained how he arrived at this conclusion, and that the gauze was "deep in the tissues." The trial court found that these dates were during Deal's hospitalization and that "[t]he record fail[ed] to establish how Ms[.] Deal could have stuffed the gauze of that size into a pin hole wound opening without experience significant pain, given her reaction at the time the [gauze] was removed." After extensive review of the record, we agree with the trial court's determination that Deal could not have placed the gauze into the wound and, therefore, the gauze was placed in the wound under the hospital's care and control.

### C.    Whether Deal established proximate causation.

¶30.    GLH asserts that Deal did not establish that the retained gauze was a proximate cause of her delayed healing because Dr. McLeod's opinions about wound healing and delay were unsupported and undisclosed. However, as discussed above, Dr. McLeod was qualified as an expert to testify about the effect of foreign bodies in a wound. Therefore, under Mississippi's standards for admission of expert testimony, "a qualified medical expert is permitted to extrapolate causation testimony from the patient's clinical picture although the

14

medical records contain no objective medical evidence establishing causation." *Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 678 (¶27) (Miss. 2010). Dr. McLeod testified, after a review of Deal's medical records, that the gauze was to a reasonable degree of medical certainty left in the wound in January or early February 2008 and that after the gauze was removed in July 2008, the wound healed properly. These opinions were both consistent with his pre-trial designation and deposition testimony. Further, it is clear from the record that Dr. McLeod based his opinion on his knowledge, training, expertise, and review of Deal's medical records. This basis was all that Mississippi law required.

## CONCLUSION

¶31.    In summary, the trial court did not commit manifest error in allowing Dr. McLeod to testify as an expert at Deal's trial.  Dr. McLeod sufficiently showed his familiarity with the effects of a foreign object being left in a wound, and his testimony did not amount to trial by ambush. Further, Dr. McLeod sufficiently opined about the required elements of a medical-negligence case. Thus, the trial court did not commit manifest error in denying GLH's motion to alter or amend the judgment or, in the alternative, for a new trial. Therefore, we affirm.

¶32.    **AFFIRMED.**

    **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR.  CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, J.**

    **CARLTON, J., DISSENTING:**

¶33.    I would reverse and remand because the trial court abused its discretion, and therefore erred, when it allowed Dr. McLeod to testify as to expert opinions not disclosed in his

15

pretrial designations, thus resulting in a trial by ambush. Additionally, the trial court erred in allowing Dr. McLeod to testify as to wound care when he was not qualified to testify as to wound care and the standard of care applicable to wound-care professionals.[6]

¶34. Mississippi Rule of Civil Procedure 26(f)(1) requires litigants to supplement interrogatory discovery responses in regard to the identity of each person "expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony." *Hyundai Motor Am. v. Applewhite*, 53 So. 3d 749, 758 (¶33) (Miss. 2011); *Cleveland Nursing & Rehab., LLC v. Estate of Gully*, 206 So. 3d 516, 522 (¶20) (Miss. 2016). "[Rule 26(f)] also imposes a duty *on the parties* to amend a prior response when 'the party knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.'" *Hyundai Motor Am.*, 53 So. 3d at 758 (¶33) (emphasis in original) (quoting M.R.C.P. 26(f)(2)(B)). "The failure seasonably to supplement or amend a response is a discovery violation that may warrant sanctions, including exclusion of evidence." *Id.* (citing *Ekornes Duncan v. Rankin Med Ctr.*, 808 So. 2d 955, 958-59 (¶¶8-11) (Miss. 2002)). As in *Hyundai*, the trial court here failed to grant relief despite the plaintiff's failure to comply with Rule 26(f). In doing so, the trial judge abused her discretion. *See Cleveland Nursing & Rehab.*, 206 So. 3d at 522 (¶¶20-22) (finding that the plaintiff was not entitled to present expert testimony as to any opinion not provided in discovery responses and

---

[6] *See McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 181 (¶¶15-16) (Miss. 2009) (citing and discussing the requirements of the two-prong test under Mississippi Rule of Evidence 702).

also finding that the expert therein was not entitled to present expert testimony on the cause of death where the expert did not fully disclose his opinion as to the patient's cause of death in his designations); *Inn by the Sea Homeowner's Ass'n, Inc. v. Seainn, LLC*, 170 So. 3d 496, 503-05 (¶¶16-24) (Miss. 2015) (affirming exclusion of expert's testimony regarding damages where plaintiff failed to disclose the basis of the majority of expert's cost opinions).  For these reasons, I would reverse and remand for a new trial.

**WILSON, J., JOINS THIS OPINION.**